

**PSIC** | Professional Solutions
INSURANCE COMPANY

14001 University Avenue, Clive, Iowa  50325-8258
Toll-Free 800-788-8540 • Toll-Free Fax 800-510-6370

*Protecting Reputations ... One Doctor at a Time*

I hereby certify that the attached copy is true
and correct as the policy was written at the
date of loss.

DATED December 11, 2014 AT CLIVE, IOWA


Jacqueline L. Anderson
Secretary

# PSIC | Professional Solutions INSURANCE COMPANY

United States Avenue, Suite #750325-8258
Toll-Free 800-788-8540   Toll-Free FAX 800-510-6370

# CORPORATION AND PARTNERSHIP MEDICAL PROFESSIONAL LIABILITY INSURANCE POLICY DECLARATION

**Policy Number:** PPL513076     ☐ New    ☐ Renewal    ✓ Revision

**Named Insured:**
Housecall Physicians of Illinois SC DBA MD@Home
1100 W Cermak Road
Suite 500C
Chicago, IL 60608

**Change Effective Date:** 12/5/2014

**Specialty/Classification:**
80999 - Professional Entity

**Policy Period:** 5/23/2014 to 5/23/2015 at 12:01 A.M.
Standard Time at the **Named Insured's** address above

**Retroactive Date:** 5/23/2011 12:00:00 AM

**Limits of Liability:** $1,000,000 Per Claim
                         $3,000,000 Policy Aggregate

**Deductible:** None

**IMPORTANT NOTICE:** This is a Claims Made policy. The coverage provided by this **Policy** is limited to liability for **Claims** taking place on or after the **Retroactive Date** stated above and first reported in writing by the **Insured** during the **Policy Period** or within the thirty (30) day **Automatic Extended Reporting Period**, unless an Extended Reporting Endorsement is purchased, which provides an unlimited period in which to report covered **Claims**. The Extended Reporting Endorsement will be offered in the event of termination of the policy for any reason. During the first few years, claims made **Policy** rates generally are lower than occurrence **Policy** rates. However, there is a yearly increase until the claims made policy reaches maturity. Please review this **Policy** carefully and discuss this coverage with your insurance agent.

**Annual Policy Premium: $55,406.00**

THIS **POLICY** SHALL NOT BE EFFECTIVE UNLESS THE FIRST INSTALLMENT PAYMENT IS RECEIVED ON OR BEFORE THE DUE DATE DISPLAYED ON THE INVOICE

**Forms and Endorsements Attached to this Policy:**
Please see attached schedule of forms and endorsements

**Agent:**
812 - Tedrick Group
1129 Broadway St
PO Box 848
Mt Vernon, IL 62864

**Agent ID:**
812
**Agent Phone & Fax:**
(618) 244-5800
(618) 244-7765

*Jacqueline L. Anderson*
Authorized Representative

# PSIC
Professional Solutions
INSURANCE COMPANY

**CORPORATION AND PARTNERSHIP
PROFESSIONAL LIABILITY
SCHEDULE OF FORMS AND ENDORSEMENTS**

**Named Insured:** Housecall Physicians of Illinois SC DBA
MD@Home

**Policy Number:** PPL513076

**Policy Period:** 5/23/2014 to 5/23/2015

**Change Effective Date:** 12/5/2014

IN RETURN FOR PAYMENT OF PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS
**POLICY**, THIS SCHEDULE LISTS ALL FORMS, SCHEDULES AND ENDORSEMENTS
ATTACHED TO THIS **POLICY**

## SCHEDULE OF FORMS AND ENDORSEMENTS

| Form Number & Edition Date | Description |
|---|---|
| PSIC-CM-01GRP 06/10 | Corporation and Partnership Medical Professional Liability Insurance Policy |
| PSIC-CM-16GRP 04/13 | Covered Proceeding Amendatory Endorsement |
| PSIC-CM-17Grp (IL) 07/13 | Corporation and Partnership Regulatory Proceeding, Network Security & Privacy Proceeding Endorsement |
| PSIC-CM-IL-01GRP 03/11 | Illinois Amendatory Endorsement |
| PSIC-CM-IL-02 12/10 | Illinois Important Notice |
| PSIC-CM-IL-04 12/10 | Illinois Vicarious Liability Risks Excluded Endorsement |
| PSIC-CM-SchCE 03/10 | Schedule of Covered Entities |
| PSIC-CM-SchCP 03/10 | Schedule of Covered Physicians |
| PSIC-CM-SchMLP 03/10 | Schedule of Covered Mid-Level Providers |



**PSIC** | Professional Solutions
INSURANCE COMPANY

CORPORATION AND PARTNERSHIP
PROFESSIONAL LIABILITY
SCHEDULE OF COVERED ENTITIES

**Named Insured:** Housecall Physicians of Illinois SC DBA
MD@Home

**Policy Number:** PPL513076

**Policy Period:** 5/23/2014 to 5/23/2015

**Change Effective Date:** 12/5/2014

IN RETURN FOR PAYMENT OF PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS
**POLICY**, THIS SCHEDULE AMENDS THE **POLICY** TO ADD EACH OF THE FOLLOWING AS
A COVERED ENTITY UNDER THE **POLICY**

## SCHEDULE OF COVERED ENTITIES

| Insured Information | Retroactive Date | Coverage Effective Date | Coverage Termination Date | Annual Premium |
|---|---|---|---|---|
| Housecall Physicians of Illinois SC DBA MD@Home | 5/23/2011 | 5/23/2013 | | $5,155.00 |
| Class Code/Description: 80999 - Professional Entity | | | | |
| Professional Liability Limits: See Declaration Page | | | | |
| Deductible: None | | | | |
| Cyber/RAC Limits: $50,000 Each Claim/$100,000 Annual Aggregate | 5/23/2011 | 5/23/2014 | | |

**PSIC** Professional Solutions
INSURANCE COMPANY

CORPORATION AND PARTNERSHIP
PROFESSIONAL LIABILITY
SCHEDULE OF COVERED PHYSICIANS

**Named Insured:** Housecall Physicians of Illinois SC DBA
MD@Home

**Policy Number:** PPL513076

**Policy Period:** 5/23/2014 to 5/23/2015

**Change Effective Date:** 12/5/2014

IN RETURN FOR PAYMENT OF PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS
**POLICY**, THIS SCHEDULE AMENDS THE **POLICY** TO ADD EACH OF THE FOLLOWING AS
A COVERED PHYSICIAN UNDER THE **POLICY**

## SCHEDULE OF COVERED PHYSICIANS

| Insured Information | Retroactive Date | Coverage Effective Date | Coverage Termination Date | Annual Premium |
|---|---|---|---|---|
| Brian Boe, MD | 1/1/2012 | 5/23/2013 | | $19,232.00 |
| Class Code/Specialty: 80420 - Family Practice, GP (excl. OB) - No Surgery | | | | |
| Limits: $1,000,000 Per Claim/$3,000,000 Policy Aggregate | | | | |
| Deductible: None | | | | |
| Cyber/RAC Limits: $50,000 Each Claim/$50,000 Annual Aggregate | 1/1/2012 | 5/23/2014 | | |
| Russell Miller, MD | 8/1/2012 | 5/23/2013 | | $16,375.00 |
| Class Code/Specialty: 80420 - Family Practice, GP (excl. OB) - No Surgery | | | | |
| Limits: $1,000,000 Per Claim/$3,000,000 Policy Aggregate | | | | |
| Deductible: None | | | | |
| Cyber/RAC Limits: $50,000 Each Claim/$50,000 Annual Aggregate | 8/1/2012 | 5/23/2014 | | |
| Anjalie Narasimhan, MD | 9/23/2013 | 9/23/2013 | | $14,644.00 |
| Class Code/Specialty: 80257 - Internal Medicine - No Surgery | | | | |
| Limits: $1,000,000 Per Claim/$3,000,000 Policy Aggregate | | | | |
| Deductible: None | | | | |
| Cyber/RAC Limits: $50,000 Each Claim/$50,000 Annual Aggregate | 9/23/2013 | 5/23/2014 | | |

**PSIC** | Professional Solutions
INSURANCE COMPANY

CORPORATION AND PARTNERSHIP
PROFESSIONAL LIABILITY SCHEDULE
OF COVERED MID-LEVEL PROVIDERS

**Named Insured:** Housecall Physicians of Illinois SC DBA
MD@Home

**Policy Number:** PPL513076

**Policy Period:** 5/23/2014 to 5/23/2015

**Change Effective Date:** 12/5/2014

IN RETURN FOR PAYMENT OF PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS
**POLICY**, THIS SCHEDULE AMENDS THE **POLICY** TO ADD EACH OF THE FOLLOWING AS A
COVERED MID-LEVEL PROVIDER UNDER THE **POLICY**

| SCHEDULE OF COVERED MID-LEVEL PROVIDERS | | | | |
|---|---|---|---|---|
| Insured Informaiton | Retroactive Date | Coverage Effective Date | Coverage Termination Date | Annual Premium |
| Gretchen Jones, PA | 3/31/2014 | 3/31/2014 | | $0.00 |
| Class Code/Specialty: 80116 - Physician Assistant | | | | |
| Limits of Liability: Shared with Housecall Physicians of Illinois SC DBA MD@Home | | | | |
| Deductible: None | | | | |
| CyberRAC Limits: Shared | 3/31/2014 | 5/23/2014 | | |
| Aisha Johnson, PA | 9/2/2014 | 9/2/2014 | | $0.00 |
| Class Code/Specialty: 80116 - Physician Assistant | | | | |
| Limits of Liability: Shared with Housecall Physicians of Illinois SC DBA MD@Home | | | | |
| Deductible: None | | | | |
| CyberRAC Limits: Shared | 9/2/2014 | 9/2/2014 | | |
| Ronald Keller, PA | 12/5/2014 | 12/5/2014 | | $0.00 |
| Class Code/Specialty: 80116 - Physician Assistant | | | | |
| Limits of Liability: Shared with Housecall Physicians of Illinois SC DBA MD@Home | | | | |
| Deductible: None | | | | |
| CyberRAC Limits: Shared | 12/5/2014 | 12/5/2014 | | |
| Amir Zadaka, NP | 5/23/2014 | 5/23/2014 | 8/8/2014 | $0.00 |
| Class Code/Specialty: 80965 - Nurse Practitioner | | | | |
| Limits of Liability: Shared with Housecall Physicians of Illinois SC DBA MD@Home | | | | |
| Deductible: None | | | | |

**PSIC** | Professional Solutions
INSURANCE COMPANY

# ILLINOIS AMENDATORY ENDORSEMENT

The "Important Notice" section of the policy is deleted and replaced as follows:

## IMPORTANT NOTICE:

This is a Claims Made policy. Please read it carefully. The coverage provided by this **Policy** is limited to liability for **Claims** taking place on or after the **Retroactive Date** stated on the **Declarations** and first reported in writing by the **Insured** during the **Policy Period** or within the thirty (30) day **Automatic Extended Reporting Period**, unless an Extended Reporting Endorsement is purchased, which provides an unlimited period in which to report covered **Claims**. The Extended Reporting Endorsement will be offered in the event of termination of the policy for any reason. During the first few years, claims made **Policy** rates generally are lower than occurrence **Policy** rates. However, there is a yearly increase until the claims made **Policy** reaches maturity.

Exclusion 5 of the policy is amended to read as follows:

5. Sexual impropriety, sexual intimacy, sexual assault, sexual harassment or any other similarly defined act. However, notwithstanding the foregoing, the **Insured** shall be protected under the terms of this **Policy** as to any **Claim** and or allegation which may be covered by the **Policy** upon which any **Claim** or **Suit** may be brought against the **Insured**, for any such alleged behavior by an **Insured** unless a judgment or a final adjudication adverse to the **Insured** shall establish that such behavior occurred as an essential element of the cause of action so adjudicated.

Exclusion 6 of the policy is deleted in its entirety:

6. The providing or failure to provide **Professional Services** while **You,** or any other **Insured** for whose acts or omissions **You** are legally responsible, is under the influence of intoxicants or drugs.

Exclusion 13 of the policy is amended to read as follows:

13. This **Policy** does not apply to punitive or exemplary **Damages**, fines, penalties imposed by law, or matters uninsurable under the law pursuant to which this **Policy** is construed, unless the law of the state in which the **Insured** is licensed to practice prohibits such an exclusion. If a **Suit** is brought against the **Insured** with respect to a **Claim** for acts or alleged acts falling within the coverage, seeking both compensatory and punitive or exemplary **Damages**, then **We** will provide a defense to such action without liability, however, for such punitive or exemplary **Damages**.

The following replaces Item 7 "Assistance and Cooperation of the **Insured**" of the "Conditions" section of the policy:

7. Assistance and Cooperation of the **Insured**. An **Insured** shall cooperate with **Us**. Upon **Our** request, an **Insured** shall attend hearings and trials and assist in making settlements. If requested, the **Insured** shall also secure and give evidence, report facts, assist in obtaining the attendance of witnesses and otherwise assist in the conduct of **Suits**. Also, upon request, an **Insured** will help enforce any right of contribution, indemnity or apportionment that an **Insured** might have so that **We** might exercise those rights in the name of an **Insured**. An **Insured** shall not, except at an **Insured's** cost and with **Our** prior written consent, voluntarily make any payment, assume any obligation or incur any expense. An **Insured** shall do nothing to prejudice **Our** defense of any **Suit**. An **Insured** shall not enter into any oral or written contracts or agreements that in any way impair or waive **Our** right of defense.

The following replaces Item 9 "Other Insurance" of the "Conditions" section of the policy:

9. Other Insurance. If an **Insured** has other insurance against a loss, which is also covered by this **Policy** and is an **Insured** or policyholder of the other insurance, this **Policy** will still apply to the loss. However, **We** shall not be liable under this **Policy** for a greater proportion of the loss than that stated in the applicable contribution below:

   a. If all other valid and collectible insurance provides for contribution by equal shares, **We** shall not be liable for a greater proportion of the loss than would be payable if each insurer contributed an equal share. However, when the share of each insurer equals the lowest applicable limit of liability under any one policy and if the loss has not been paid in full, the remaining insurer then continues to contribute equal shares of the remaining amount of loss until each insurer has paid its limits in full or the amount of the loss is paid in full.

   b. If any other insurance does not provide for contributions by equal shares, **We** shall not be liable for a greater proportion of the loss than the applicable limit of **Our** liability bears to the total applicable limit of liability of all valid and collectible insurance against the loss.

The following replaces Item 15 "Cancellation and Non-renewal" of the "Conditions" section of the policy:

15. Cancellation and Non-Renewal. **You** may cancel this **Policy** by returning it to **Us**. **You** may also cancel by giving **Us** advance written notice of when the cancellation is to take effect. **We** may cancel or not renew this **Policy** by mailing notice to **You** at **Your** last known address. Notice to **You** must be sent sixty (60) days before the cancellation or nonrenewal date. If **You** fail to pay any premium when due, **We** may cancel this **Policy** by mailing notice to **You** at **Your** last known address at least ten (10) days in advance. The reason for any cancellation or non-renewal will be stated in the notice. Proof of mailing is proof of notice for purposes of this provision. The effective date and hour of cancellation stated in the notice or the time of surrender of the **Policy** shall become the end of the **Policy Period**. If **You** cancel the **Policy**, earned premium will be computed in accordance with the standard short rate tables and procedures. If **We** cancel the **Policy**, earned premium will be computed pro-rata.

After this **Policy** has been in effect for sixty (60) days, it may be cancelled only for one of the following reasons:

a. Nonpayment of premium;
b. The **Policy** was obtained through a material misrepresentation;
c. Any **Insured** violated any of the terms and conditions of the **Policy**;
d. The risk originally accepted was measurably increased;
e. Certification to the Director of Insurance of the loss of reinsurance which provided coverage to **Us** for all or a substantial part of the underlying risk insured; or
f. A determination by the Director of Insurance that the continuation of the **Policy** could place **Us** in violation of the insurance laws of this state.

The following replaces Item 21 "Authorization and Notices" of the "Conditions" section of the policy:

21. Authorization and Notices. The **Named Insured** is authorized to act on behalf of all **Insureds** with respect to accepting this **Policy** and any endorsements, receiving unearned premium or dividends, and agreeing to any changes in this **Policy**.

The following replaces Section XII. Extended Reporting Endorsement ("Tail Coverage") of the policy:

If this **Policy** is cancelled or non-renewed for any reason, the **Named Insured** and each **Covered Physician** will have the right to purchase an Extended Reporting Endorsement for an additional premium. The Extended Reporting Endorsement will provide coverage for **Claims** first made during the **Extended Reporting Period**, provided that the **Claim**

arose from such injury which are not based on the applicable **Retroactive Date** and prior to the termination date.

**If the Extended Reporting Endorsement is not purchased, there will be no coverage for Claims first made during the Extended Reporting Period.**

**We** will notify the **Named Insured** in writing within thirty (30) days after the termination date of the availability and additional premium required to purchase an Extended Reporting Endorsement. The **Named Insured** will be given the greater of sixty (60) days from the effective date of termination of the **Policy** or thirty (30) days from date of notice to purchase the Extended Reporting Endorsement. If the **Named Insured** does not provide written acceptance of and pay the additional premium for the Extended Reporting Endorsement by the end of this sixty (60) day period, **We** have no further obligation to make the Extended Reporting Endorsement available.

**We** will compute the additional premium for the Extended Reporting Endorsement in accordance with **Our** rules in effect on the termination date. The Extended Reporting Endorsement will be effective as of the termination date and will continue for an unlimited time period thereafter. Upon cancellation of the Extended Reporting Endorsement, **We** will not refund any additional premium **You** have paid.

The Extended Reporting Endorsement is subject to all **Policy** provisions. The limit of liability for the Extended Reporting Endorsement will be equal to or less than the Per Claim Limit of Liability and the Policy Aggregate Limit of Liability of the **Policy** in effect on the termination date. The Extended Reporting Endorsement applies only to **Claims** first made during the **Extended Reporting Period**.

To calculate the premium for the Extended Reporting Endorsement, the following tail factors will be applied to the expiring annual premium:

| Number of Years of Claims Made Coverage | Tail Factor |
|---|---|
| 1 | 3.680 |
| 2 | 2.860 |
| 3 | 2.179 |
| 4 | 2.022 |
| 5+ | 1.870 |

**We** will provide the Extended Reporting Endorsement at no additional charge to a **Covered Physician** or the **Covered Physician's** estate if any one of the following circumstances occurs:

1. The **Covered Physician** dies. In the event of a **Covered Physician's** death during the **Policy Period**, **We** must be notified within sixty (60) days that this coverage is desired. Written proof of the **Covered Physician's** death must be provided in order for the Extended Reporting Endorsement to be issued.

2. The **Covered Physician** is totally and permanently disabled at any time during the **Policy Period** and is unable to continue his or her duties as a licensed **Insured**. **We** must be provided with written documentation from a health care provider confirming the **Covered Physician's** disability.

3. The **Covered Physician** retires from practice, is at least 55 years of age and has five (5) years of continuous coverage with **Us** under this claims made **Policy**.

PSIC | Professional Solutions
INSURANCE COMPANY

## ILLINOIS IMPORTANT NOTICE

This notice is to advise you that should any complaints arise regarding this insurance, you may contact the following:

Professional Solutions Insurance Company
14001 University Avenue
Clive, IA 50325-8258

Illinois Division of Insurance
Consumer Division or Public Services Section
Springfield, IL 62767



**PSIC** | Professional Solutions
INSURANCE COMPANY

## ILLINOIS VICARIOUS LIABILITY RISKS EXCLUDED ENDORSEMENT

**Named Insured:** Housecall Physicians of Illinois SC DBA MD@Home     **Policy Period:** 5/23/2014 to 5/23/2015

**Policy Number:** PPL513076     **Change Effective Date:** 12/5/2014

SUBJECT TO ALL THE TERMS OF THIS **POLICY**, THIS ENDORSEMENT AMENDS THE **POLICY** TO EXCLUDE THE FOLLOWING VICARIOUS LIABILITY RISKS.

## AMENDED TERMS AND CONDITIONS

For the purposes of this endorsement, the following exclusion is added to **Section VIII. Exclusions:**

> Any vicarious liability arising from **Professional Services** provided by, or which should have been provided by, an **Excluded Healthcare Provider**.

For the purposes of this endorsement, the following definition is added to **Section I. Definitions:**

> **Excluded Healthcare Provider** means any individual or entity designated in the schedule below.

## SCHEDULE OF EXCLUDED HEALTHCARE PROVIDERS

| Excluded Healthcare Provider | Start Date | End Date |
|---|---|---|
| Michael A Savage, MD | 3/13/2014 | |

See signature and date on file.
Signature of **Named Insured**        Date



PSIC | Professional Solutions
INSURANCE COMPANY

# COVERED PROCEEDING AMENDATORY ENDORSEMENT

Named Insured: Housecall Physicians of Illinois
SC DBA MD@Home

Policy Number: PPL513076

Policy Period: 5/23/2014 to 5/23/2015

Effective Date: 12/5/2014

SUBJECT TO ALL THE TERMS OF THIS **POLICY**, THIS ENDORSEMENT
AMENDS THE **POLICY** AS INDICATED BELOW.

## AMENDED TERMS AND CONDITIONS

For the purposes of this endorsement, Item 8. **Covered Proceeding** under **Section I. Definitions** is deleted and replaced as follows:

    8. **Covered Proceeding** means and is limited to the following:

        a. **State Disciplinary Proceeding** means a proceeding (including any investigation by a **Government Authority** preliminary thereto) threatened or instituted by a state medical licensing authority or other **Government Authority** against an **Insured** for unprofessional conduct.

For the purposes of this endorsement, Item 15. **Government Authority** under **Section I. Definitions** is deleted and replaced as follows:

    15. **Government Authority** means only state professional licensing and disciplinary authorities.

Form PSIC-CM-16Grp

04/13

**PSIC** | Professional Solutions
INSURANCE COMPANY

# CORPORATION AND PARTNERSHIP
# MEDICAL PROFESSIONAL LIABILITY INSURANCE POLICY
## (CLAIMS MADE AND REPORTED FORM)

### THIS IS A NON-ASSESSABLE POLICY

### IMPORTANT NOTICE:

This is a Claims Made Policy. Please read it carefully. The coverage provided by this **Policy** is limited to liability for **Claims** taking place on or after the **Retroactive Date** stated on the **Declarations** and first reported in writing by the **Insured** during the **Policy Period** or within the thirty (30) day **Automatic Extended Reporting Period**, unless an Extended Reporting Endorsement is purchased, which provides an unlimited period in which to report covered **Claims**. The Extended Reporting Endorsement is not available if **Your Policy** is cancelled by **Us** for nonpayment of premium or **Deductible(s)**. During the first few years, claims made **Policy** rates generally are lower than occurrence **Policy** rates. However, there is a yearly increase until the claims made **Policy** reaches maturity.

This **Policy** is not valid unless a **Declarations** page is attached.

Issued by:
## PROFESSIONAL SOLUTIONS INSURANCE COMPANY

(A Stock Insurance Company)
Incorporated under the
Laws of the State of Iowa
**Home Office: 14001 University Ave.**
**Clive, Iowa 50325-8258**
**(800) 788-8540**

PSIC-CM-01Grp

Ed. 06/10

# Table of Contents

| Sections | | Page |
|---|---|---|
| I. | DEFINITIONS | 3 |
| II. | COVERAGE AGREEMENT | 6 |
| III. | DEFENSE AND SETTLEMENT CLAUSE | 7 |
| IV. | SUPPLEMENTARY PAYMENTS | 7 |
| V. | LEGAL DEFENSE FOR GOVERNMENT PROCEEDINGS | 8 |
| VI. | DEFINITION OF INSURED | 9 |
| VII. | TERRITORY | 10 |
| VIII. | EXCLUSIONS | 10 |
| IX. | LIMITS OF LIABILITY AND DEDUCTIBLE | 12 |
| X. | DISCOVERY OF POTENTIAL CLAIMS | 13 |
| XI. | CONDITIONS | 14 |
| XII. | EXTENDED REPORTING ENDORSEMENT | 17 |

# Section I. Definitions

Throughout this **Policy**, **You** and **Your** mean any **Insured** under this **Policy**. The words **We**, **Our** and **Us** refer to Professional Solutions Insurance Company.

Other words and phrases with special meanings are defined below. They are bold faced when used in this **Policy** (which includes any endorsements).

1. **Additional Interest** means any entity listed on an Additional Interests Endorsement.

2. **Affiliated Healthcare Provider** means any person listed on a Vicarious Liability for Affiliated Healthcare Provider Endorsement.

3. **Automatic Extended Reporting Period** means the thirty (30) day period immediately following the date of termination of the **Policy** during which all **Claims**, arising from the performance of **Professional Services** on or after the **Retroactive Date** and before the end of the **Policy Period** and otherwise covered by this **Policy** may be first made against **You** and reported to **Us** if, and only if, the **Insured** does not obtain an Extended Reporting Endorsement or coverage for such **Claims** under this or any other policy issued by **Us** or by another insurance carrier.

4. **Claim** means a written demand for money or services which the **Insured** has received or otherwise has knowledge of, arising from an alleged **Injury** to which this insurance applies and is not otherwise excluded by the terms and conditions of this **Policy**.

5. **Covered Entity** means any entity listed as a covered entity on the Schedule of Covered Entities.

6. **Covered Mid-Level Provider** means any person listed as a covered mid-level provider on the Schedule of Covered Mid-Level Providers.

7. **Covered Physician** means any person listed as a covered physician on the Schedule of Covered Physicians

8. **Covered Proceeding** means and is limited to the following:

   a. **State Disciplinary Proceeding** means a proceeding (including any investigation by a **Government Authority** preliminary thereto) threatened or instituted by a state medical licensing authority or other **Government Authority** against an **Insured** for unprofessional conduct.

   b. **Federal Professional Review Organization Sanctions** means a proceeding or investigation instituted against an **Insured** by a professional review organization pursuant to Parts 1004 and 1005 of Title 42, Chapter V, Code of Federal Regulations to impose sanctions on an **Insured** (a "PRO Sanction Proceeding").

c. **HIPAA or Privacy Related Proceeding** means a proceeding or investigation instituted against an **Insured** by a state department of health services or the federal Department of Health and Human Services involving:

   i. Allegations of a violation of the Health Insurance Portability and Accountability Act; or

   ii. Allegations of a violation of any other state or federal privacy regulation.

9. **Damages** means the monetary portion of any judgment, award or settlement, but does not include:

   a. Punitive or exemplary **Damages**, any **Damages** that are a multiple of compensatory **Damages**, fines, penalties or sanctions; or

   b. Judgments or awards considered uninsurable by law.

10. **Declarations** means the section of this **Policy** titled "DECLARATIONS" that sets forth certain important information about the **Named Insured** and this **Policy**.

11. **Deductible** means the amount shown as the "**Deductible**" designated in either the **Declarations** or Schedules of Covered Physicians, Entities, and Mid-Level Providers attached to this **Policy.**

12. **Employee** means any person employed by, or acting under the direction and control of, the **Named Insured** or **Covered Physician**. However, it does not include any:

   a. Intern, extern, fellow, dental, chiropractic, osteopathic or medical doctor; or

   b. Certified Registered Nurse Anesthetist (CRNA); nurse midwife; Nurse Practitioner (NP); Physician Assistant (PA); podiatrist; or surgical assistant.

13. **Extended Reporting Period** means the time after the end of the **Policy Period** during which **Claims** arising out of an **Incident** which takes place on or after the **Retroactive Date** and prior to the end of the **Policy Period** that otherwise are covered by this **Policy** may be first made and reported to **Us**, and set forth in an endorsement, if any, issued pursuant to **Section XII. Extended Reporting Endorsement** of this **Policy.**

14. **Fiduciary Duty** means the duty that arises when the business transacted, money or property handled, is not **Your** own or for **Your** benefit, but for the benefit of another person, to whom **You** stand in a relationship implying and necessitating confidence, trust and good faith, whether or not that duty arises by matter of law, contract or otherwise. This includes duties which may arise as a fiduciary under the Employee Retirement Income Security Act of 1974 or any of its amendments.

15. **Government Authority** means any federal, state, local or municipal department, agency, task force, organization or other entity, or any official thereof, of the government created by any federal, state or municipal law, executive order, ordinance or rule, or operated, funded or staffed, in whole or in part, by the federal, any state or municipal government for the purpose of regulating any part of the professional practice of the **Insured.** This

includes only state professional licensing and disciplinary authorities, state department of health services, the federal Department of Health and Human Services, and professional review organizations authorized or directed to be established pursuant to federal or state law.

16. **Incident** means any negligent omission, act or error in the providing of **Professional Services**. All such omissions, errors or acts causally related to the rendering of or failure to render **Professional Services** to one person shall be considered one **Incident**. Causally related acts, errors or omissions that have a common cause or form a causal chain of events shall be considered one **Incident**. An **Incident** shall be deemed to have occurred at the time of the earliest act, error or omission comprising that **Incident**.

17. **Injury** means bodily injury, sickness, disease or death sustained by any one person.

18. **Insured** means any person or organization qualifying under **Section VI. Definition of Insured**.

19. **Legal Expenses** means reasonable fees and expenses of legal counsel and expert consultants, including their costs and expenses of investigation and travel, costs of transcripts, court filing fees and other reasonable costs and expenses incurred in **Your** defense.

20. **Locum Tenens** means any substitute physician or surgeon named in a **Locum Tenens** Schedule endorsed to this **Policy** while a **Covered Physician** is temporarily absent from professional practice. This definition includes such persons only while acting within the scope of his or her duties for the **Named Insured** and does not include substitution on a regular basis for any reason.

21. **Mid-Level Provider** means an individual employed by, or acting under the supervision, direction and control of, the **Named Insured or Covered Physician** and is duly licensed to practice under one or more of the following licenses: Certified Registered Nurse Anesthetist (CRNA); Nurse Practitioner (NP); Physician Assistant (PA); or Surgeon Assistant (SA).

22. **Named Insured** means the **Insured** designated as such on the **Declarations** and Schedules of Covered Physicians, Entities and Mid-Level Providers.

23. **Peer Review** means the evaluation of the care rendered by another licensed health care professional for the purpose of determining the qualifications and/or the competency of the licensed health care professional.

24. **Policy** means the insurance contract issued by **Us** to the **Named Insured** including the **Declarations**.

PSIC-CM-01Grp

Ed. 06/10

25. **Policy Period** means the period from the effective date of this **Policy** to the **Policy** expiration date set forth in the **Declarations** or the cancellation date, whichever occurs first.

26. **Professional Services** means the diagnosis of, treatment or medical care for or medical consultation regarding a patient's medical condition.

27. **Retroactive Date** means the date stated as the "Retroactive Date" in the **Declarations** for this **Policy**.

28. **Suit** means a civil action filed in a court of law in which **Damages** to which this **Policy** applies are alleged.

## Section II.  Coverage Agreement

Within the limit of liability shown on the **Declarations**:

In return for payment of premium and subject to all the terms of this **Policy** and the exclusions stated in **Section VIII. Exclusions**, **We** will pay on behalf of an **Insured** all sums in excess of the **Deductible(s)** to which this insurance applies and for which an **Insured** becomes legally obligated to pay as **Damages** because of an **Injury** caused by an **Incident** in the performance of **Professional Services** by **You** or someone for whom **You** are legally responsible as provided in this **Policy**.  The **Injury** must occur on or after the **Retroactive Date** shown on the **Declarations** and before this **Policy** or coverage for an **Insured** terminates.  Any **Claim** associated with an **Injury** caused by an **Incident** must be first reported to **Us** in writing during the **Policy Period** or the **Automatic Extended Reporting Period**.  The **Injury** must also be caused by an **Insured** under this **Policy**.

## Section III.  Defense and Settlement Clause

**We** have the right and duty to defend any **Claim** or **Suit** brought seeking **Damages** against the **Insured** for an **Injury** caused by an **Incident** covered by this **Policy**.  **We** have the right to appoint counsel and **We** may investigate any **Claim** made or **Suit** brought.  **We** shall not be obligated to pay any **Claim** or judgment or defend or to continue to defend any **Suit** after the limit of **Our** liability is exhausted because of payment of judgments or settlements.  With **Your** written consent, **We** may settle any **Claim** or **Suit** as **We** believe may be proper.

**We** shall not be obligated to obtain written consent from **You** to settle any **Claim** or **Suit**:

1. After a jury verdict, judgment or any other ruling by a court or arbitrator establishing **Your** liability regardless of whether such verdict, judgment or ruling is subject to appeal or further judicial review;

2. If **You** are deceased, have been declared legally incompetent by a court, or if a guardian, conservator or receiver has been appointed for **You**;

3. If **Your** personal liability for this **Claim** has been extinguished by any bankruptcy proceeding;

4. If **You** cannot be located after reasonable efforts have been made by **Us**; or
5. If **You** are not the **Named Insured**.

## Section IV. Supplementary Payments

In addition to the limit of **Our** liability shown on the **Declarations**, **We** will pay:

1. All expenses incurred by **Us** when defending any **Claim** or **Suit** covered by this **Policy**.
2. All court costs taxed against the **Insured** in any **Claim** or **Suit** defended by **Us**.
3. All reasonable expenses incurred by **You** at **Our** request in assisting **Us** in the investigation or defense of an **Incident** or **Suit**, including actual loss of earnings up to a maximum of five hundred dollars ($500) for each **Insured** per day.
4. Any interest incurred on that portion of a judgment covered under this **Policy** and within the applicable limit of liability.
5. Premiums on appeal bonds and premiums on bonds to release attachments in any **Suit** subject to defense under this **Policy**. The bonds must be for an amount not more than the limit of **Our** liability. However, **We** have no obligation to furnish or obtain these bonds.
6. **Legal Expenses** and **Damages** that arise out of **Your** utilization review services, including the rendering of an opinion on the adequacy, necessity or reasonableness of care furnished by another licensed health care professional based on the review of the patient's records without a physical examination. Supplementary payments for **Legal Expenses** and **Damages** under this section shall apply separately to each **Covered Physician** and will be limited to $25,000 per **Incident**/$50,000 aggregate for all actions arising during the **Policy Period**.
7. **Legal Expenses** and **Damages** that arise out of **Your Peer Review** services, including services as a member of a formal accreditation, standards review or other professional board or committee. Supplementary payments for **Legal Expenses** and **Damages** under this section shall apply separately to each **Covered Physician** and will be limited to $25,000 per **Incident**/$50,000 aggregate for all actions arising during the **Policy Period**.
8. Any **Deductible(s)** stated in the **Declarations** or Schedule of Covered Physicians shall not apply to the Supplementary Payments described in this Section.

## Section V. Legal Defense for Government Proceedings

This **Policy** provides for payment of **Legal Expenses** incurred by the **Insured** in certain **Covered Proceedings**.

1. **We** will pay on behalf of a **Covered Physician** any reasonable **Legal Expenses** required in the defense of certain **Covered Proceedings** which arise from a **Covered Physician's** performance of **Professional Services** first brought against **You** and reported to **Us** during the **Policy Period**.
2. **Our** obligation shall commence with respect to a **Covered Proceeding** at such time as **We** receive written notification from the **Insured** that a **Covered Proceeding** has been instituted. **We** shall have no obligation with respect to any **Legal Expenses** incurred by the **Insured** prior to such notification.

3. Upon receipt of written notification **We** have the right and duty to defend a **Covered Physician** in a **Covered Proceeding**. **We** also have the right to appoint counsel and investigate any **Covered Proceedings**.

4. **Our** liability for **Legal Expenses** with respect to each **Covered Proceeding** instituted against a **Covered Physician** is limited to twenty-five thousand dollars ($25,000) regardless of the number of **Incidents** alleged in any and all such **Covered Proceedings** initially instituted against that **Covered Physician** in the same **Policy Period**. In no event shall **Our** obligation for **Legal Expenses** exceed one hundred thousand dollars ($100,000) in the aggregate for any and all such **Covered Proceedings** initially instituted against any and all **Covered Physicians** in the same **Policy Period**.

5. For the purpose of **Section V. Legal Defense for Government Proceedings,** the coverage provided herein does not apply to or provide payment for:

   a. Any sanctions, penalties, fines, **Damages**, amounts paid in settlement, costs of investigations assessed or incurred by governmental authorities, restitution, return or refund of fees, costs of instituting compliance or integrity programs, or interest on any of the foregoing, which an **Insured** becomes legally obligated to pay as a result of a **Covered Proceeding**;

   b. Any criminal action or proceeding against an **Insured**;

   c. Any **Legal Expenses** arising from the actual, threatened, or claimed sexual abuse, sexual impropriety, sexual intimacy, sexual assault, sexual harassment or any other similar defined act;

   d. Any **Legal Expenses** arising out of any matter and/or action against any **Insured** for alleged violation of the Social Security Act, the Medicare Modernization Act of 2003, the Tax Relief and Healthcare Act of 2006, the Omnibus Budget Reconciliation Act of 1989 (Stark I) and/or the Omnibus Budget Reconciliation Act of 1993 (Stark II) including but not limited to provisions of all Phase changes and the Social Security Act of 1994;

   e. Any **Legal Expenses** arising out of any matter other than a **Covered Proceeding**; or

   f. Any **Legal Expenses** arising out of a **Covered Proceeding** instituted or threatened against an **Insured** prior to the **Policy Period**.

6. For the purposes of **Section V. Legal Defense for Government Proceedings** the definition of **Legal Expense** shall not include:

   a. Any salary, wage, overhead or benefit expenses or other payments to the **Insured,** an **Employee** or **Mid-Level Provider** of the **Insured, Covered Entity,** medical partnership, association or corporation for services rendered in connection with such defense or investigation;

   b. Any amounts incurred in defense of any **Covered Proceeding** for which any other insurer has a duty to defend, regardless of whether such other insurer undertakes such duty; or

   c. Any settlements or judgments.

## Section VI. Definition of Insured

1. The **Named Insured** as listed in the **Declarations**.
2. Any **Covered Physician** as designated in a Schedule of Covered Physicians issued as part of this **Policy**.
3. Any **Covered Entity** as designated in a Schedule of Covered Entities issued as part of this **Policy**.
4. Any **Covered Mid-Level Provider** as designated in a Schedule of Covered Mid-Level Providers issued as part of this **Policy**.
5. Any **Employee** of the **Named Insured** unless any other valid and collectable insurance applies.
6. Subject to **Our** pre-approval, any substitute (**Locum Tenens**) physician, surgeon or dentist named in a **Locum Tenens** Schedule endorsed to this **Policy** while a **Covered Physician** is temporarily absent from professional practice and for no more than sixty (60) days per **Policy Period**. This definition includes such person only while acting within his or her scope of duties for the **Named Insured** and does not include substitution on a regular basis for any reason.
7. Any person defined in paragraphs 1. through 5. above for **Professional Services** rendered as a "Good Samaritan" in sudden and unforeseen emergencies outside the scope of his or her patient care duties for the **Named Insured** and for which services no remuneration is demanded or received. Coverage as provided by this paragraph applies only to the extent that immunity for such "Good Samaritan" liability is not afforded by any "Good Samaritan" statute.
8. Any person or entity that was an **Insured**, as defined in paragraphs 4. through 7. above, at the time the **Incident** took place.

## Section VII. Territory

This **Policy** applies to the providing or failure to provide **Professional Services** in the state or states in which the **Insured** is licensed to practice.

## Section VIII. Exclusions

This **Policy** does not apply to liability of an **Insured** or to any **Damages**, **Incidents**, **Claims** or **Suits** arising out of, based upon or attributable to any of the following:

1. An act or omission violating any federal or state statute, or any county or municipal ordinance governing the commission of a crime. However this exclusion does not apply to the extent there is otherwise coverage under **Section V. Legal Defense for Government Proceedings**.
2. Liability resulting from any **Professional Services** that an **Insured** renders outside of his or her medical licensure and as limited by his or her representations disclosed in the application for this **Policy**.
3. Any **Claim** or **Incident** arising from the performance of any **Professional Services**:

a. Which takes place while **Your** professional license is under suspension or has been revoked, surrendered or has otherwise terminated or is not in effect;

b. Which involves dispensing or prescribing controlled substances while **Your** license or registration to dispense such substances is under suspension or has been revoked, surrendered or has otherwise terminated or is not in effect; or

c. That is not permitted pursuant to any probation or restriction of **Your** professional license or **Your** license or registration to dispense or prescribe controlled substances.

4. False imprisonment; false arrest; libel; slander; defamation; invasion of privacy or discrimination.

5. Sexual impropriety, sexual intimacy, sexual assault, sexual harassment or any other similarly defined act.

6. The providing or failure to provide **Professional Services** while **You**, or any other **Insured** for whose acts or omissions **You** are legally responsible, are under the influence of intoxicants or drugs.

7. Any obligation for which an **Insured** or the **Insured's** insurer, self-insured fund or plan, may be liable under any worker's compensation, occupational disease, unemployment compensation, disability benefits, or other similar law.

8. Any liability assumed by the **Insured** for the acts of others under any contract or agreement. However, this exclusion does not apply to any liability that the **Insured** would have in absence of such contract or agreement.

9. Any liability of an **Insured** under any agreement or statement guaranteeing the result of any **Professional Services**.

10. The intentional infliction of **Injury**.

11. Any **Claim** under an Unfair Trade Practices Act, workers compensation statute or any other similar statutes or any **Claim** made under Title 18 of the United States Code, sections 1962 to 1964, otherwise called the RICO laws.

12. Any **Claim** arising out of any matter and/or action against any **Insured** for alleged violation of the Social Security Act, the Medicare Modernization Act of 2003, the Tax Relief and Healthcare Act of 2006, the Omnibus Budget Reconciliation Act of 1989 (Stark I) and/or the Omnibus Budget Reconciliation Act of 1993 (Stark II) including but not limited to provisions of all Phase changes and the Social Security Act of 1994.

13. This **Policy** does not apply to punitive or exemplary **Damages**, fines, penalties imposed by law, or matters uninsurable under the law pursuant to which this **Policy** is construed, unless the law of the state in which the **Insured** is licensed to practice prohibits such an exclusion.

14. Liability arising out of the disposing of unused medications into public wastewater collection systems or septic systems, or the discharge, dispersal, seepage, migration, release or escape of vapors, soot, acids, alkalis, toxic chemicals, liquids or gases, waste or hazardous materials or other irritants, contaminants, or pollutants. However this exclusion does not apply with respect to **Your** rendering of **Professional Services** to a patient.

15. Liability arising out of the hazardous properties of nuclear material. However this exclusion does not apply to liability arising from **Your** rendering of **Professional Services** to a patient or from **Your** practice of nuclear medicine.

16. Liability:

a. For any **Claim** made against **You** prior to the effective date of this **Policy**;

b. For, or in any way arising out of, circumstances that were known or reasonably should have been known by the **Insured** prior to the **Retroactive Date** that gives rise to a **Claim** or **Suit** that otherwise would be covered by this **Policy**; or

c. For, or in any way arising out of, or in any way involving any **Incident**, circumstance or situation, either known or reasonably should have been known, which has been the subject of any notice, either given or which should have been given, to any insurer prior to the effective date of this **Policy** or under any other policy of insurance.

17. Despite any other provision of this **Policy**, this **Policy** does not apply to any **Claim** alleged to be caused by:

 a. **Your** breach of **Fiduciary Duty**;

 b. **Your** actual gaining of personal profit, or advantage to which **You** are not legally entitled;

 c. Remuneration paid to **You** if such payment is held by the courts to be in violation of the law;

 d. **Your** alleged or actual involvement in any:

  i. Anti-trust law violation; or

  ii. Agreement or conspiracy to restrain trade;

 e. The failure to collect contributions owed to any employee benefit plan or the failure to return any contributions if such amounts are, or could be, chargeable to the Employee Benefit Plan; or

 f. Benefits payable or paid to a participant or beneficiary of an Employee Plan.

18. Any **Claim** resulting directly or indirectly, from improperly authored, published, promulgated or released medical research data, studies or results or other text or other media provided by or on **Your** behalf.

19. Liability arising from the design, manufacture, use, distribution, promotion, or sale of any non-FDA approved medication, device or equipment, or protocols.

20. Any **Claim** made against **You**, by any present or former student, trainee, intern, or resident arising out of the providing of, or failure to provide any diploma, degree, certificate, award, qualification, reference, recommendation; or providing any wrongful or inadequate training or instruction.

21. Any duties as a medical director for any facility or medical institution or practice, other than **Your** own practice.

22. Any **Claim** arising out of any acts or omissions of any current or past partnership, corporation, association or joint venture that is not considered an **Insured** under this **Policy**, or arising out of **Your** status as a member, shareholder, owner, officer or director thereof.

23. Any liability resulting from any **Incident** in which the **Insured**, or someone for whom the **Insured** is responsible, altered, destroyed, or partially destroyed any medical or other record for the purpose of concealing any **Injury**, error, omission or responsibility related to a **Claim**, whether or not any criminal proceeding or penalty results.

# Section IX. Limits of Liability and Deductible

1. **Our** limit of liability for **Damages** for which this coverage applies shall not exceed the amount stated as the Per Claim Limit of Liability in the **Declarations**, regardless of the

number of: (a) **Insureds**; (b) claimants or persons who sustain **Damages**; (c) **Claims** or **Suits** brought; (d) **Policies** issued by **Us**; or (e) number of **Policy** years during which treatment is rendered.

2. **Our** total liability for all **Damages** during a **Policy Period** shall not exceed the amount stated as the Policy Aggregate Limit of Liability in the **Declarations**, regardless of the number of (a); **Claims**; (b) **Insureds**; (c) claimants or persons who sustain **Damages**; (d) **Policies** issued by **Us**; or (e) number of **Policy** years during which treatment was rendered.

3. In the event an **Insured** is afforded coverage for a **Claim** under another policy **We** have issued, then in no event will **We** pay **Damages** in an amount greater than the highest limit of liability available under any one **Policy We** issued and under which **You** are entitled to coverage.

4. **Covered Physicians** who are insured pursuant to **Section VI. Definition of Insured** will be afforded limits of liability pursuant to the Schedule of Covered Physicians issued as part of this **Policy**.

5. **Covered Entities** who are insured pursuant to **Section VI. Definition of Insured** will be afforded limits of liability pursuant to the Schedule of Covered Entities issued as part of this **Policy.**

6. **Covered Mid-Level Providers** who are insured pursuant to **Section VI. Definition of Insured** will be afforded limits of liability pursuant to the Schedule of Covered Mid-Level Providers issued as part of this **Policy**.

7. **Employees** who are insured pursuant to **Section VI. Definition of Insured** will share the limits of liability of the **Named Insured** as listed on the **Declarations**.

8. **Locum Tenens** who are insured pursuant to **Section VI. Persons Insured** will share the limits of liability of the **Covered Physician** as listed on the Schedule of Covered Physicians.

9. **We** shall have the right to allocate **Damages** and **Legal Expenses** amongst **Insureds** and policies as **We** deem appropriate.

10. If any **Deductible(s)** are designated in either the **Declarations** or Schedules of Covered Physicians, Entities, and Mid-Level Providers attached to this **Policy** and are designated as "Damages Only," it is agreed and understood **Our** duty to pay **Damages** for any **Claim** will be limited in the following manner:

   a. **We** shall only have a duty to pay **Damages** in excess of the **Deductible(s)**, subject to the applicable limits of liability as designated in the **Declarations** for this **Policy.**

   b. The **Named Insured** shall have a duty to pay all **Damages** which do not exceed the **Deductible(s)**. However, **We** retain the right to pay all **Damages**, inclusive of any **Deductible(s)**, and seek reimbursement from the **Named Insured** for any such **Deductible(s)**. The **Named Insured** shall reimburse **Us** within 30 days of **Our** payment of the **Deductible** amount(s).

   c. The limits of liability set forth in the **Declarations** or Schedules of Covered Physicians, Entities, and Mid-Level Providers attached to this **Policy** are in addition to and in excess of such **Deductible** amount(s).

11. If any **Deductible(s)** are designated in either the **Declarations** or Schedules of Covered Physicians, Entities, and Mid-Level Providers attached to this **Policy** and are designated as "Damages and Legal Expenses," it is agreed and understood **Our** duty to pay **Damages** and **Legal Expenses** for any **Claim** will be limited in the following manner:

a. We shall only have a duty to pay **Damages** and **Legal Expenses** in excess of the **Deductible(s)**, subject to the applicable limits of liability as designated in the **Declarations** for this **Policy**.

b. The **Named Insured** shall have a duty to pay all **Damages** and **Legal Expenses** which do not exceed the **Deductible(s)**. However, **We** retain the right to pay all **Damages** and **Legal Expenses**, inclusive of any **Deductible(s)**, and seek reimbursement from the **Named Insured** for any such **Deductible(s)**. The **Named Insured** shall reimburse **Us** within 30 days of **Our** payment of the **Deductible** amount(s).

c. The limits of liability set forth in the **Declarations** or Schedules of Covered Physicians, Entities, and Mid-Level Providers attached to this **Policy** are in addition to and in excess of such **Deductible** amount(s).

The limit of liability shown on the **Declarations** as applying to the Per Claim Limit is the limit of our liability for all **Damages**, including **Damages** sustained by other persons. **Damages** sustained by other persons include, but are not limited to, **Damages** for loss of services, loss of consortium, wrongful death and emotional distress.

## Section X. Discovery of Potential Claims

Discovery Clause. If during the **Policy Period You** become aware of an **Incident** for which coverage may otherwise be afforded under this **Policy**, **You** must give **Us** written notice as soon as practicable. The notice **You** provide **Us** shall describe the act, error or omission, state the name of the patient or any other person involved, including any other persons for whom **You** may be responsible, together with the date(s) of the **Incident** and full particulars of the circumstances surrounding the **Incident**. Any **Claim** that may be subsequently made against **You** arising from or based upon the **Incident** described in the notice will be deemed to have first been reported during the **Policy Period, Automatic Extended Reporting Period**, or the **Extended Reporting Period**, if applicable.

Reports made to **Us** orally by any **Insured**, or reports or surveys authored by or furnished to **Us** as part of loss control, risk management or quality assurance shall not be considered notice of a **Claim**.

## Section XI. Conditions

The insurance provided by this **Policy** is subject to the following conditions:

1. **Declarations** and Applications. By acceptance of this **Policy**, the **Named Insured** agrees that the statements in the **Declarations** and corresponding endorsements are accurate; that the statements in any application for this **Policy** are its agreements and representations; that they will be deemed material; that this **Policy** is issued in reliance upon the truth of such representations; and, that this **Policy** embodies all agreements existing between **You** and **Us** or any of **Our** agents relating to this **Policy**. Misrepresentations made by any **Insured** in applying for this **Policy** shall invalidate this **Policy** to all **Insureds**.

2.     Changes in Practice. If the location, nature, scope of **Your** practice or hazards insured against has changed from that which is stated on **Your** original application or renewal application, including but not limited to the changes described in items a. through h. below, **You** must inform **Us** immediately in writing of such changes. No change will be effective until a written request is received and approved by **Us**.

   a.   Any change in **Professional Services** provided by **You** or someone for whom **You** are legally responsible;

   b.   Any change in **Your** profession described in the **Declarations**;

   c.   Any change in the location of **Your** practice;

   d.   If any **Insured's** licensing status or privileges are restricted or limited in any way;

   e.   If **You** intend to add a **Covered Physician**, **Covered Entity** or **Covered Mid-Level Provider** to **Your** practice;

   f.   If any **Insured** enters, leaves or is discharged from a diversion or rehabilitation program;

   g.   If any **Insured** undergoes treatment, or is advised by a physician, peer review committee, hospital credentialing committee or licensing agency to undergo treatment for alcohol, drug or other substance, or psychiatric illness; or

   h.   If any **Insured** is being investigated, formally or informally, by any state licensing agency or healthcare review board.

3.     **Additional Interest**. **Our** duty to defend and pay **Damages** on behalf of the **Named Insured** shall extend to the vicarious liability of an **Additional Interest** named in a **Claim** whose liability results solely from the acts or omissions of the **Named Insured**. In such event, the **Additional Interest** shall share in the limits of liability of the **Named Insured**. However, this extension of coverage shall only apply to a **Claim** which is otherwise covered under this **Policy**. Under no circumstance shall an **Additional Interest** have any right to a defense or indemnity under this **Policy** with regard to any **Injury** caused by, or any **Claim** which alleges **Injury** caused by, the direct or contributory acts or omissions of the **Additional Interest**.

4.     **Affiliated Healthcare Provider**. **Our** duty to defend and pay **Damages** on behalf of the **Named Insured** shall extend to any **Claim** in which the **Named Insured** is held vicariously liable for the rendering or failure to render **Professional Services** by an **Affiliated Healthcare Provider** on behalf of the **Named Insured**. However, this extension of coverage shall only apply to a **Claim** which is otherwise covered under this **Policy**. In addition, under no circumstance shall an **Affiliated Healthcare Provider** have any right to a defense or indemnity under this **Policy**.

5.     Loss Control. It is the duty of the **Insured** to implement loss control methods. Discovery of willful or grossly negligent acts, omissions, events or violation of State or federal laws or regulations establishing safety, health and occupational standards will be grounds for cancellation of this **Policy**.

6.     Notice of **Claim** or **Suit**. When **You** become aware of any **Claim** or **Suit** alleging **Injury**, written notice shall be given to **Us** as soon as practicable. The notice shall contain information sufficient to identify the **Insured** as to the time, place and circumstances of the alleged **Injury**. The name and address of the person claiming an **Injury** and of any witness to the **Injury** shall also be included in the notice. If a **Suit** is brought against the **Insured**,

the **Insured** must immediately forward to **Us** every demand, notice, summons, complaint or other process alleging **Injury** by the **Insured** or the **Insured's** representative.

7. Assistance and Cooperation of the **Insured**. An **Insured** shall cooperate with **Us**. Upon **Our** request, an **Insured** shall attend hearings and trials and assist in making settlements. If requested, the **Insured** shall also secure and give evidence, report facts, obtain the attendance of witnesses and otherwise assist in the conduct of **Suits**. Also, upon request, an **Insured** will help enforce any right of contribution, indemnity or apportionment that an **Insured** might have so that **We** might exercise those rights in the name of an **Insured**. An **Insured** shall not, except at the **Insured's** cost and with **Our** prior written consent, voluntarily make any payment, assume any obligation or incur any expense. An **Insured** shall do nothing to prejudice **Our** defense of any **Suit**. An **Insured** shall not enter into any oral or written contracts or agreements that in any way impair or waive **Our** right of defense.

8. Action Against **Us**. No legal action may be brought against **Us** until there has been full compliance with all the terms of this **Policy** by an **Insured**. In addition, no legal action may be brought against **Us** until the amount of an **Insured's** obligation to pay is finally determined either by judgment after trial or by written agreement between the claimant and **Us** or **You** with **Our** approval. No other person or organization has any right under this **Policy** to make **Us** a party to any action to decide an **Insured's** liability.

9. Other Insurance. If an **Insured** has other insurance that is applicable to any **Claim**, **Suit** or **Incident** covered under this **Policy**, then this **Policy** is excess insurance over any other applicable insurance.

10. **Deductible**. If any **Deductible(s)** are not paid within thirty (30) days of demand by **Us**, **We** will pursue recovery of the **Deductible(s)** by means of any form of collections.

11. Subrogation. If any payment is made under this **Policy**, **We** shall be subrogated to all the **Insured's** rights of recovery against any person or organization. The **Insured** shall execute and deliver instruments and papers and do whatever is necessary to secure such rights. The **Insured** shall do nothing to prejudice those rights. Any amounts recovered will be allocated as follows: Any recovery will first be used to pay any loss and expense payments by the **Insured** in excess of any **Deductible(s)**; second, to repayment of the **Insured's Deductible(s)**; third, for repayment to **Us** of expenses incurred toward subrogation; fourth, to any loss and expense payments by **Us** on behalf of the **Insured**; and last, to any loss and expense payments by any excess carrier on behalf of the **Insured**.

12. Premiums. All premiums for this **Policy** shall be computed according to **Our** rules, rates and rating plans in effect with respect to the period for which premiums are due. The premium is due on the date set in the premium notice. If the premium is not paid by that date, the **Policy** will be cancelled. **You** must keep records of all information **We** need for premium computation and send **Us** copies at such times **We** may request.

13. Changes. Notice to any person or knowledge possessed by any person shall not cause a waiver or change in any part of this **Policy** or stop **Us** from asserting any right under the terms of this **Policy**. The terms of this **Policy** may only be waived or changed by endorsement issued as a part of this **Policy**.

14. **Automatic Reporting Extension**. In the event that this **Policy** is cancelled or non-renewed by either **Us** or the **Named Insured**, **You** shall have an **Automatic Extended Reporting Period** of thirty (30) days immediately following the termination of this **Policy** during which **Claims** otherwise covered by this **Policy** may be first made against **You** and

reported to **Us**, but only if **You** do not obtain an extended reporting endorsement or coverage for such **Claims** under this or any other **Policy** issued by **Us** or by another insurance carrier. The **Automatic Extended Reporting Period** applies only to **Incidents** which take place on or after the **Retroactive Date** stated in the **Declarations** and before the termination of coverage. The **Automatic Extended Reporting Period** does not extend the **Policy Period**, change the scope of coverage provided, or change the limits of liability.

15. Cancellation and Non-Renewal. **You** may cancel this **Policy** by returning it to **Us**. **You** may also cancel by giving **Us** advance written notice of when the cancellation is to take effect. **We** may cancel or not renew this **Policy** by mailing notice to **You** at **Your** last known address. Notice to **You** must be sent sixty (60) days before the cancellation or non-renewal date. If **You** fail to pay any premium when due or any **Deductible** amounts due **Us**, **We** may cancel this **Policy** by mailing notice to **You** at **Your** last known address at least ten (10) days in advance. The reason for any cancellation or non-renewal will be stated in the notice. Proof of mailing is proof of notice for purposes of this provision. The effective date and hour of cancellation stated in the notice or the time of surrender of the **Policy** shall become the end of the **Policy Period**. If **You** cancel the **Policy**, earned premium will be computed in accordance with the standard short rate tables and procedures. If **We** cancel the **Policy**, earned premium will be computed pro-rata.

16. Assignment. The interest of any **Insured** in this **Policy** is not assignable. If the **Insured** shall die or become incompetent, this insurance shall thereupon terminate for such person but shall cover the **Insured's** legal representative as the **Insured** with respects to liability previously incurred and covered by this insurance.

17. Bankruptcy or Insolvency. The bankruptcy or insolvency of any **Insured** shall not relieve **You** or **Us** of any of **Our** obligations hereunder. The bankruptcy or insolvency of any **Insured** shall not increase any amounts of money payable hereunder.

18. Examination of **Your** Books and Records. **We** may examine and audit **Your** books and records as they relate to this **Policy** during the **Policy Period** and up to three years following termination or expiration of the **Policy**.

19. Terms Conform to Statute or Regulation. Any term of this **Policy** that is in conflict with a statute or regulation of the state where the **Policy** is issued is amended to conform to such statute or regulation.

20. Liberalization. If during this **Policy Period**, **We** revise this **Policy** form to extend or broaden coverage without increasing the premium, then this **Policy** will automatically provide the additional coverage as of the date that the revision is effective in the state where this **Policy** is issued.

21. Authorization and Notices. The **Named Insured** is authorized to act on behalf of all **Insureds** with respect to accepting this **Policy** and any endorsements, the giving or receiving of notice of cancellation, receiving unearned premium or dividends, and agreeing to any changes in this **Policy**.

22. Policy Headings. The headings used in this **Policy** are for convenience only and shall not define, limit or otherwise affect the terms and conditions of this **Policy**.

## Section XII. Extended Reporting Endorsement

If this **Policy** is cancelled or non-renewed for any reason, except for nonpayment of premium or nonpayment of any **Deductible** amounts due **Us**, the **Named Insured** and each **Covered**

**Physician** will have the right to purchase an Extended Reporting Endorsement for an additional premium. The Extended Reporting Endorsement will provide coverage for **Claims** first made during the **Extended Reporting Period**, provided that the **Claim** arose from a covered **Injury** that first occurred on or after the applicable **Retroactive Date** and prior to the termination date.

**If the Extended Reporting Endorsement is not purchased, there will be no coverage for Claims first made during the Extended Reporting Period.**

**We** will notify the **Named Insured** in writing within thirty (30) days after the termination date of the availability and additional premium required to purchase an Extended Reporting Endorsement. The **Named Insured** will be given the greater of sixty (60) days from the effective date of termination of the **Policy** or thirty (30) days from date of notice to purchase the Extended Reporting Endorsement. If the **Named Insured** does not provide written acceptance of and pay the additional premium for the Extended Reporting Endorsement by the end of this sixty (60) day period, **We** have no further obligation to make the Extended Reporting Endorsement available.

**We** will compute the additional premium for the Extended Reporting Endorsement in accordance with **Our** rules in effect on the termination date. The Extended Reporting Endorsement will be effective as of the termination date and will continue for an unlimited time period thereafter. **We** cannot cancel the Extended Reporting Endorsement except for non-payment of the additional premium. Upon cancellation of the Extended Reporting Endorsement, **We** will not refund any additional premium **You** have paid.

The Extended Reporting Endorsement is subject to all **Policy** provisions. The limit of liability for the Extended Reporting Endorsement will be equal to or less than the Per Claim Limit of Liability and the Policy Aggregate Limit of Liability of the **Policy** in effect on the termination date. The Extended Reporting Endorsement applies only to **Claims** first made during the **Extended Reporting Period**.

**We** will provide the Extended Reporting Endorsement at no additional charge to a **Covered Physician** or the **Covered Physician's** estate if any one of the following circumstances occurs:

1.  The **Covered Physician** dies. In the event of a **Covered Physician's** death during the **Policy Period**, **We** must be notified within sixty (60) days that this coverage is desired. Written proof of the **Covered Physician's** death must be provided in order for the Extended Reporting Endorsement to be issued.
2.  The **Covered Physician** becomes totally and permanently disabled at any time during the **Policy Period** and is unable to continue his or her duties as a licensed **Insured**. **We** must be provided with written documentation from a health care provider confirming the **Covered Physician's** disability.
3.  The **Covered Physician** retires from practice, is at least 55 years of age, and has five (5) years of continuous coverage with **Us** under this claims made **Policy**.

In Witness Whereof, We have caused this Policy to be executed and attested, and, if required by state law, this Policy shall not be valid unless countersigned by our authorized representatives.


Jacqueline L. Anderson
Secretary


Rodney Warren
President

PSIC | Professional Solutions
INSURANCE COMPANY

# REGULATORY PROCEEDING, NETWORK SECURITY & PRIVACY PROCEEDING ENDORSEMENT

## THIS ENDORSEMENT CHANGES YOUR POLICY – PLEASE READ IT CAREFULLY

### NOTICE TO POLICYHOLDER

This Endorsement amends **your** Professional Solutions Insurance Company Corporation and Partnership Medical Professional Liability Insurance Policy to add Regulatory Proceeding, Network Security and Privacy Proceeding coverage. This Endorsement contains Insuring Agreements for Coverages A through H. Unless an insuring agreement states otherwise, this Endorsement provides claims-made and reported coverage, meaning coverage applies only to **claims** first made against an **insured** during the **policy period** and reported to **us** during the **policy period**. Various provisions in this Endorsement restrict coverage. Read the entire Endorsement carefully to determine an **insured's** rights and duties; and what is and is not covered.

Section III of this Endorsement specifies **our** limit of liability for the coverage provided under this Endorsement. Such limit of liability is in addition to, and will not erode, the limits provided elsewhere in the **policy**. **Defense costs** paid under this Endorsement will erode the limits set forth in Section III of this Endorsement.

Throughout this Endorsement, the words "**we**," "**us**," and "**our**" refer to Professional Solutions Insurance Company. Other words and phrases that appear in bold have special meaning. Refer to Section VI – Definitions of this Endorsement.

## SECTION I – COVERAGES

A. In reliance upon statements made in the application and subject to the terms, conditions, definitions, exclusions, and other provisions of this Endorsement, **we** agree to amend the **policy** by adding specified coverages A through H.

B. **Insuring Agreements**

1. Coverage A – Multimedia Liability: **We** agree to pay all amounts within the applicable limit of liability set forth in Section III – Limits of Liability, which an **insured** becomes legally obligated to pay as **loss**, including liability **assumed under contract**, and related **defense costs**, because of a **claim** for a **multimedia peril**, provided that:

   a. such **claim** is first made against an **insured** during the **policy period**;
   b. such **claim** is reported to **us** during the **policy period**; and
   c. such **claim** arises out of a **multimedia peril** that takes place or first commences on or after the **retroactive date**.

2. Coverage B - Security and Privacy Liability: **We** agree to pay all amounts within the applicable limit of liability set forth in Section III – Limits of Liability, which an **insured** becomes legally obligated to pay as **loss**, and related **defense costs**, because of a **claim** for a **security and privacy wrongful act**, provided that:

   a. such **claim** is first made against an **insured** during the **policy period**;
   b. such **claim** is reported to **us** during the **policy period**; and

c.      such **claim** arises on or after the **retroactive date**.

3.      <u>Coverage C – Privacy Regulatory Defense and Penalties</u>:  **We** agree to pay all amounts within the applicable limit of liability set forth in Section III – Limits of Liability, which an **insured** becomes legally obligated to pay as **regulatory fines and penalties** and/or a **regulatory compensatory award**, and related **defense costs**, because of a **claim** resulting from a **security breach** or **privacy breach**, provided that:

a.      such **claim** is first made against an **insured** during the **policy period**;

b.      such **claim** is reported to **us** during the **policy period**; and

c.      such **claim** arises out of a **security breach** or **privacy breach** that takes place or first commences on or after the **retroactive date**.

4.      <u>Coverage D – **Privacy Breach Response Costs, Patient Notification Expenses and Patient Support and Credit Monitoring Expenses**</u>:  **We** agree to pay all reasonable amounts within the applicable limit of liability set forth in Section III – Limits of Liability, which an **insured** incurs as **privacy breach response costs, patient notification expenses**, and/or **patient support and credit monitoring expenses** during the **policy period** as a direct result of a **security breach** or **privacy breach**, provided that:

a.      a **claim** is first made by an **insured** during the **policy period**;

b.      the **security breach** or **privacy breach** takes place or first commences on or after the **retroactive date**; and

c.      the **security breach** or **privacy breach** is reported to **us** no later than sixty (60) days from the date an **insured** first discovers the **security breach** or **privacy breach**.

5.      <u>Coverage E – Network Asset Protection</u>:

a.      **Loss** of **Digital Assets**

**We** agree to pay all reasonable amounts within the applicable limit of liability set forth in Section III – Limits of Liability, which an **insured** incurs as **digital assets loss** and/or **special expenses** during the **policy period** because of a **covered cause of loss**, which directly causes damage, alteration, corruption, distortion, theft, misuse or destruction of an **insured's digital assets**, provided that:

1)      such **covered cause of loss** takes place or first commences during the **policy period**;

2)      the **insured** provides clear evidence that the **digital assets loss** and/or **special expenses** directly resulted from a **covered cause of loss**;

3)      a **claim** is first made by the **insured** during the **policy period**; and

4)      the **covered cause of loss** is reported to **us** no later than sixty (60) days from the date an **insured** first discovers the **covered cause of loss**.

**Digital assets loss** and/or **special expenses** will be reimbursed for a period of up to twelve (12) months following the discovery of the damage, alteration, corruption, distortion, theft, misuse or destruction of the **insured's digital assets**.

5.   Non-Physical Business Interruption and Extra Expense

**We** agree to pay all reasonable amounts within the applicable limit of liability set forth in Section III – Limits of Liability that an **insured** incurs as **income loss, interruption expenses** and/or **special expenses** during the **period of restoration** because of a **covered cause of loss**, which directly causes a total or partial interruption, degradation in service or failure of the **insured's computer system**, provided that:

1)   such **covered cause of loss** takes place or first commences during the **policy period**;

2)   the **insured** provides clear evidence that the **income loss, interruption expenses** and/or **special expenses** directly resulted from a **covered cause of loss**;

3)   a **claim** is first made by an **insured** during the **policy period**;

4)   the **covered cause of loss** is reported to **us** no later than sixty (60) days from the date an **insured** first discovers the **covered cause of loss**; and

5)   the total or partial interruption, degradation in service or failure of the **insured's computer system** exceeds the **waiting period**.

6.   Coverage F – Cyber Extortion:  **We** agree to pay all reasonable amounts within the applicable limit of liability set forth in Section III – Limits of Liability, which an **insured** incurs as **cyber extortion expenses** and/or **cyber extortion monies** because of a **cyber extortion threat**, provided that:

a.   such **cyber extortion threat** is first made against an **insured** during the **policy period**;

b.   a **claim** is first made by an **insured** during the **policy period**;

c.   the **insured** provides clear evidence that the **cyber extortion expenses** and/or **cyber extortion monies** directly resulted from a **cyber extortion threat**; and

d.   the **cyber extortion threat** is reported to **us** no later than sixty (60) days from the date the **cyber extortion threat** is made against an **insured**.

**Cyber extortion expenses** and/or **cyber extortion monies** shall not be paid without **our** prior consultation and written authorization.  An **insured** must make every reasonable effort to notify local law enforcement authorities and the Federal Bureau of Investigation or similar equivalent foreign agency before surrendering any **cyber extortion monies** in response to a **cyber extortion threat**.

7.   Coverage G – Cyber Terrorism:  **We** agree to pay all reasonable amounts within the applicable limit of liability set forth in Section III – Limits of Liability, which an **insured** incurs as **income loss, interruption expenses** and/or **special expenses** during the **period of restoration** because of an **act of terrorism**, which directly causes a total or partial interruption, degradation in service or failure of the **insured's computer system**, provided that:

a.   such **act of terrorism** takes place or first commences during the **policy period**;

b.   an **insured** provides clear evidence that the **income loss, interruption expenses** and/or **special expenses** directly resulted from an **act of terrorism**;

c.   a **claim** is first made by an **insured** during the **policy period**;

d.   the **act of terrorism** is reported to **us** no later than sixty (60) days from the date an **insured** first discovers the **act of terrorism**; and

e.   the total or partial interruption, degradation in service or failure of an **insured's computer system** exceeds the **waiting period**.

8.   Coverage H - Regulatory Proceedings:  **We** agree to pay all amounts within the applicable limit of liability set forth in Section III – Limits of Liability, which an **insured** becomes legally obligated to pay as **regulatory fines and penalties** and/or which an **insured** incurs as **defense costs** or **shadow audit expenses** because of a **claim** for a **wrongful act**, provided that:

a.   such **claim** is first made against an **insured** during the **policy period**;

b.   such **claim** is reported to **us** during the **policy period**; and

c.   such **claim** arises out of a **wrongful act** that takes place or first commences on or after the **retroactive date**.

## SECTION II – EXCLUSIONS

A.   **We** are not obligated to defend or pay any **claim** based upon, arising out of, or attributable to any of the following:

1.   Any **multimedia peril, security and privacy wrongful act, security breach, privacy breach, covered cause of loss, cyber extortion threat, act of terrorism, wrongful act**, or fact, circumstance or situation:

a.   that has been reported to **us** or to any other insurer prior to the initial inception date of this coverage;

b.   that was the subject of any written demand for monetary damages, any administrative or arbitration proceeding, or any litigation commenced against any **insured** prior to the initial inception date of this coverage, or that involves the same or substantially the same facts, circumstances or situations underlying or alleged in the prior demand, proceeding or litigation;

c.   that was identified in any summary or statement of **claims** or potential **claims** submitted in connection with the application for insurance with **us**; or

d.   that took place before the initial inception date of this coverage, if on the initial inception date of this coverage, any **insured** knew, or should have known, that such **multimedia peril, security and privacy wrongful act, security breach, privacy breach, covered cause of loss, cyber extortion threat, act of terrorism, wrongful act**, or fact, circumstance or situation was likely to result in a **claim**.

2.   The actual, alleged or threatened discharge, dispersal, release or escape of pollutants, or any direction, request or voluntary decision to test for, abate, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants, nuclear material or nuclear waste.

For purposes of this exclusion, "pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including mold, smoke, vapor, soot, fumes, acids, alkalis, chemicals, odors, noise, lead, oil or oil products, radiation, asbestos or asbestos-containing products and waste. "Waste" includes, but is not limited to, material to be recycled, reconditioned or reclaimed.

3.   Any liability an **insured** assumes under a contract or agreement.  This exclusion does not apply if an **insured** would have been liable in the absence of the contract or agreement.  With respect to a **multimedia peril, security breach** or **privacy breach**, this exclusion does not apply to liability assumed by an **insured** in the form of a written hold harmless or indemnity agreement that predates such **multimedia peril, security breach** or **privacy breach**.

4.   Any actual or alleged breach of contract, warranty, guarantee or promise.  This exclusion does not apply if an **insured** would have been liable in the absence of such contract, warranty,

guarantee or promise. This exclusion does not apply to a **claim** alleging breach of an **insured's** privacy policy.

5. Any business, joint venture or enterprise not named in the **declarations** and/or Schedule of Covered Entities.

6. Any conduct, act, error or omission of any individual serving in any capacity other than as a **named insured's** principal, partner, officer, director or **employee**.

7. Any **insured** gaining in fact any profit, remuneration or financial advantage to which such party was not legally entitled. This exclusion does not apply to an otherwise covered **billing errors proceeding**.

8. Any deliberately dishonest, intentional, malicious, or fraudulent act or omission or any willful violation of law by an **insured**, if judgment or other final adjudication adverse to an **insured** establishes such an act, omission or willful violation. This exclusion does not apply to any **insured** that did not commit, participate in, or have knowledge of any such act, omission or violation of law described in this exclusion. This exclusion does not apply to an otherwise covered **claim** under Coverage E resulting from **employee** sabotage.

9. Any **claim** that is covered under any General Liability or Comprehensive General Liability Insurance, or any other coverage part of the **policy**.

10. Any actual or alleged violation of the False Claims Act (31 U.S.C. §§ 3729 – 3733) and any of its amendments; or any similar federal or state law, rule or regulation concerning billing errors or fraudulent billing practices or abuse. This exclusion does not apply to an otherwise covered **claim** under Coverage H.

11. Any actual or alleged infringement of any patent or trade secret.

12. Any actual or alleged unfair competition, price fixing, deceptive trade practices, restraint of trade or a violation of any securities or anti-trust laws.

13. Any obligation of an **insured** under a worker's compensation, employer's liability, disability benefits or unemployment compensation law, or any similar law, or any other employment or employment-related matter. This exclusion does not apply to an otherwise covered **claim** under Coverage B alleging a **security and privacy wrongful act**.

14. Any actual or alleged **bodily injury** or **property damage**.

15. Any actual or alleged harassment or discrimination, including, but not limited to, harassment or discrimination because of, or relating to, race, creed, color, age, sex, sexual orientation or preference, national origin, religion, handicap, disability, political affiliation or marital status or any other basis prohibited by federal, state or local law.

16. Any actual or alleged satellite failures; electrical or mechanical failures and/or interruption, including, but not limited to, electrical disturbance, electrical power interruption, spike, surge, brownout or blackout; or outages to gas, water, telephone, cable, telecommunications or other infrastructure, unless such infrastructure is under a **named insured's** direct operational control. This exclusion does not apply to an otherwise covered **claim** under Coverage E or G.

17.     An individual or entity's insolvency, receivership, bankruptcy or an individual or entity's inability to pay or perform obligations or to conduct business because of insolvency, receivership, bankruptcy or liquidation. Notwithstanding this exclusion, an **insured's** bankruptcy or insolvency will not release **us** from **our** obligations hereunder.

18.     Any matter brought by or on behalf of:

    a.     an **insured** against another **insured**; or

    b.     any entity that is owned, operated, managed, or controlled, directly or indirectly, in whole or in part by an **insured**; or any entity directly or indirectly controlled, operated or managed by an **insured**.

    c.     any entity that is a parent, affiliate or subsidiary of any entity in which an **insured** is a partner or joint venturer; or

    d.     any individual who is a partner or joint venturer of any entity in which an **insured** is also a partner or joint venturer.

    This exclusion does not apply to an otherwise covered **claim** under Coverage B brought by an **employee** alleging a **security and privacy wrongful act**. This exclusion does not apply to an otherwise covered **claim** under Coverage H brought by an **insured** as a **qui tam plaintiff**.

19.     An actual or alleged violation of any of the United States of America's economic or trade sanctions, including but not limited to, sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control (OFAC).

20.     An actual or alleged failure to render **professional services**. This exclusion does not apply to an **EMTALA proceeding**.

21.     The wear and tear, drop in performance, failure to maintain, or progressive deterioration or aging of an **insured's** electronic equipment or **computer hardware**.

22.     The failure of overhead transmission and distribution lines.

23.     The gradual deterioration of subterranean insulation.

24.     Fire, smoke, explosion, lightning, wind, water, flood, earthquake, volcanic eruption, tidal wave, landslide, hail, force majeure or any other physical event, however caused. This exclusion does not apply to an otherwise covered **claim** under Coverage E or G.

25.     The gradual deterioration, wear and tear, latent or time-delayed damage of an **insured's computer system**; or an **insured's** failure, or the failure of those acting on an **insured's** behalf, to maintain any computer, **computer system** or network, **computer software** or any other equipment.

26.     The actual or alleged inaccurate, inadequate or incomplete description of the price of goods, products or services.

27.     Cost guarantees, cost representations, contract price or cost estimates being exceeded.

28.     Any actual or alleged medical malpractice or professional liability errors or omissions other than those specifically covered by this Endorsement.

29.   Unauthorized trading. For purposes of this exclusion, "unauthorized" means trading, which at the time of the trade is:

    a.    in excess of permitted financial limits, or

    b.    outside of permitted product lines.

30.   The actual or alleged purchase, sale, offer, or solicitation of an offer to purchase or sell securities, the loss of value of any securities or any actual or alleged violation of any securities law, such as the provisions of the Securities Act of 1933, 15 U.S.C. § 77a et seq.; the Securities Exchange Act of 1934, 15 U.S.C. 78a et seq.; the Sarbanes-Oxley Act of 2002 (Pub. L. 107-204) or any regulation promulgated under the foregoing statutes, or any federal, state, local, or foreign laws similar to the foregoing statutes, including "Blue Sky" laws, whether such law is statutory, regulatory or common law.

31.   Actual or alleged violation of the Organized Crime Control Act of 1970 (OCCA) (Pub. L. 91-452, 84 Stat. October 15, 1970) and the "Racketeer Influenced And Corrupt Organizations Act" (RICO), 18 U.S.C. § 1961 et seq. or any regulation promulgated under the foregoing statutes, or any similar federal, state, local or foreign laws, whether such law is statutory, regulatory or common law.

32.   Any matter brought by the Federal Trade Commission, the Federal Communications Commission or any other federal, state or local governmental entity, in such entity's regulatory or official capacity.   This exclusion does not apply to an otherwise covered **claim** under Coverage C or H.

33.   The violation of any pension, healthcare, welfare, profit sharing or mutual or investment plans, funds or trusts; or the violation of any provision of the Employee Retirement Income Security Act of 1974 (ERISA) (Pub. L. 93-406, codified in part at 29 U.S.C. § 1001 et seq.) and its amendments; and/or the Pension Protection Act of 2006 (Pub. L. 109-280) and its amendments, or any regulation, ruling or order issued pursuant thereto.

34.   Labor strikes or similar labor actions.

35.   War, invasion, act of foreign enemy, hostilities or warlike operations (whether declared or not), civil war, mutiny, civil commotion assuming the proportions of or amounting to a popular uprising, military uprising, insurrection, rebellion, revolution, military or usurped power, or any action taken to hinder or defend against these actions; or the confiscation, nationalization, requisition or destruction of, or damage to, property by or under the order of any government or public or local authority; or any action taken in controlling, preventing, suppressing or in any way relating to any of the above.  This exclusion does not apply to an **act of terrorism**.

36.   An **insured's** commercial decision to cease providing a particular product or service, but only if the **insured** is contractually obligated to continue providing such products or services.

37.   Gambling or pornography; prizes, awards or coupons; or the sale or provision of illegal, prohibited, restricted or regulated items such as alcoholic beverages, tobacco or drugs.

38.   Any agreement by an **insured** to comply with, or follow, the Payment Card Industry Standard or any Payment Card Company Rules; or the implementation, maintenance or compliance with any security measures or standards related to any payment card data, such as any fine or penalty imposed by a payment card company on a merchant bank or payment processor that an **insured**

has paid or agreed to contribute or indemnify; or **regulatory fines and penalties** to the extent insurable by law and if resulting from an otherwise covered **claim** under Coverage C.

39. The use of programs that are not **operational programs** or **delivered programs**.

40. An **insured's** intentional use of illegal or unlicensed programs that are in violation of the provisions or laws referring to software protection.

41. The confiscation, commandeering, requisition, destruction of, or damage to **computer hardware** by order of a government de jure or de facto or by any public authority for whatever reason.

42. Any actual or alleged **multimedia peril, security and privacy wrongful act, security breach, privacy breach, covered cause of loss, cyber extortion threat, act of terrorism**, or **wrongful act** that occurs during any **suspension period**.

    This exclusion does not apply to:

    a. A **claim** under Coverage A, B, C, D or H that is reported during a **suspension period** which results from an actual or alleged **multimedia peril, security and privacy wrongful act, security breach, privacy breach**, or **wrongful act** that occurs on or after the **retroactive date** and before the **suspension period**; or
    b. A **claim** under Coverage E, F or G that is reported during a **suspension period** which results from a **covered cause of loss, cyber extortion threat**, or **act of terrorism** that occurs on or after the effective date of the **policy period** and before the **suspension period**.

**B.** With respect to Coverages A, B, C, D and H only, **we** are not obligated to defend or pay any **claim** based upon, arising out of, or attributable to any actual or alleged **multimedia peril, security and privacy wrongful act, security breach, privacy breach** or **wrongful act** that takes place before the **retroactive date**; or any actual or alleged **multimedia peril, security and privacy wrongful act, security breach, privacy breach** or **wrongful act** that takes place on or after the **retroactive date**, which, together with an actual or alleged **multimedia peril, security and privacy wrongful act, security breach, privacy breach** or **wrongful act** that takes place before the **retroactive date** would constitute related **multimedia perils, security and privacy wrongful acts, security breaches, privacy breaches** or **wrongful acts**.

For purposes of this exclusion, **multimedia perils, security and privacy wrongful acts, security breaches, privacy breaches** and **wrongful acts** will be deemed related if they are logically or causally connected by any common fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions.

**C.** With respect to Coverage E, item 5(a) – **Loss of Digital Assets** only, **we** are not obligated to pay any of the following:

1. Any amounts incurred in restoring, updating or replacing **digital assets** to a level beyond that which existed prior to the **covered cause of loss**;
2. Physical damage to the **computer hardware** or **data** center, other than that covered under **covered cause of loss**, paragraph 1(a);
3. Contractual penalties or consequential damages;
4. Any liability to third parties for whatever reason, including legal costs and expenses of any type;

5. Fines or penalties imposed by law;
6. The economic or market value of **digital assets**;
7. Costs or expenses incurred to identify, patch or remediate software program errors or **computer system** vulnerabilities;
8. Costs to upgrade, redesign, reconfigure or maintain the **insured's computer system** to a level of functionality beyond that which existed prior to the **covered cause of loss**; or
9. Any amounts paid under Coverage E, item 5(b), Non-Physical Business Interruption and Extra Expense.

D. With respect to Coverage E, 5(b) – **Non-Physical Business Interruption and Extra Expense** only, **we** are not obligated to pay any of the following:

1. Any amounts arising out of a physical cause or natural peril, including, but not limited to fire, wind, water, flood, subsidence or earthquake, which results in physical damage to **computer hardware** and/or any **data** center;
2. Any amounts arising out of updating or replacing **digital assets** to a level beyond that which existed prior to the **covered cause of loss**;
3. Contractual penalties or consequential damages;
4. Any liability to third parties for whatever reason, including legal costs and expenses of any type;
5. Fines or penalties imposed by law;
6. Costs or expenses incurred to identify, patch or remediate software program errors or **computer system** vulnerabilities;
7. Loss of goodwill and reputational harm;
8. Costs to upgrade, redesign, reconfigure or maintain the **insured's computer system** to a level of functionality beyond that which existed prior to the **covered cause of loss**; or
9. Any amounts paid under Coverage E, item 5(a), **loss** of **digital assets**.

E. With respect to Coverage H only, **we** are not obligated to pay any of the following:

1. **Shadow audit expenses** incurred in any **shadow audit** not previously approved by **us**;
2. **Restitution**;
3. Any amounts incurred by a consulting professional whose services were not previously approved by **us**;
4. **Defense costs, shadow audit expenses** and/or **regulatory fines and penalties** incurred in any **claim**, which is based upon, arising out of, or attributable to **professional services** or medical items which are not provided or prescribed by an **insured**;
5. Any amounts incurred in the adoption and implementation of any corporate integrity agreement, compliance program or similar provision regarding the operations of the **insured's** business, which is negotiated as part of a settlement with, or by order of, a **government entity**;
6. Any amounts incurred in any **criminal proceeding**.

# SECTION III – LIMITS OF LIABILITY

**A.** Each **Claim** Limit

1. With respect to the coverage provided under this Endorsement, the limits of liability are as follows:

|   | Coverage | Limit of Insurance |
|---|---|---|
| A | Multimedia Liability | $50,000 each **claim** |
| B | Security and Privacy Liability | $50,000 each **claim** |
| C | Privacy Regulatory Defense and Penalties | $50,000 each **claim** |
| D | Privacy Breach Response Costs, Patient Notification Expenses, and Patient Support and Credit Monitoring Costs | $50,000 each **claim** |
| E | Network Asset Protection | $50,000 each **claim** |
| F | Cyber Extortion | $50,000 each **claim** |
| G | Cyber Terrorism | $50,000 each **claim** |
| H | Regulatory Proceedings | $50,000 each **claim** |

2. Subject to the Annual Aggregate Limit, the "each **claim**" limit stated in paragraph 1 above is the most **we** will pay for each **claim** under each Insuring Agreement of this Endorsement, including **defense costs** where applicable.

3. Subject to Section III – Limits of Liability, item D – Related **Claims**, the "each **claim**" limit will apply separately to each **named insured**, provided, however, that a separate limit does not apply to any **named insured** who shares in the professional liability limits of coverage, as indicated in the **declarations** or Schedules of Covered Physicians and Entities. Any **named insured** who shares in the professional liability limits of coverage will share in the "each **claim** limit" of only one **named insured**, as determined by **us** in our sole judgment.

4. **Employees** and **mid-level providers** will share in the limits of liability of only one **named insured**.

5. **We** have the sole discretion to allocate **claims** paid, if any, against the appropriate limit of liability.

**B.** **Covered Physician** Annual Aggregate Limit

1. The Annual Aggregate Limit of Liability under this Endorsement for each **covered physician** is $50,000 for all coverages combined. The Annual Aggregate Limit includes **defense costs**.

2. **Loss, defense costs, regulatory compensatory awards, regulatory fines and penalties, privacy breach response costs, patient notification expenses, patient support and credit monitoring expenses, digital assets loss, special expenses, income loss, interruption expenses, cyber extortion expenses, cyber extortion monies and shadow audit expenses** will be paid as part of, and not in addition to the each "**claim**" limit and the Annual Aggregate Limit.

3. If the Annual Aggregate Limit for a **covered physician** is exhausted by payment of **loss, defense costs, regulatory compensatory awards, regulatory fines and penalties, privacy breach response costs, patient notification expenses, patient support and credit monitoring expenses, digital assets loss, special expenses, income loss, interruption expenses, cyber**

extortion expenses, cyber extortion monies or shadow audit expenses, or any combination thereof, then **our** obligations under this Endorsement shall be deemed completely fulfilled and extinguished for such **covered physician** and for any other **insured** sharing in such **covered physician's** coverage limits.

C. **Covered Entity** Annual Aggregate Limit

1. The Annual Aggregate Limit under this Endorsement for each **covered entity** is based on the size of the **covered entity** as of the effective date of this Endorsement and will be determined in accordance with the following table:

    | | |
    |---|---|
    | 1 Physician | $ 50,000 |
    | 2-10 Physicians | $100,000 |
    | 11-20 Physicians | $150,000 |
    | 21+ Physicians | $250,000 |

2. A separate limit does not apply to any **covered entity** who shares in the professional liability limits of coverage, as indicated in the **declarations** or Schedules of Covered Entities. Any **covered entity** who shares in the professional liability limits of coverage will share in the "annual aggregate limit" of only one **named insured**, as determined by **us** in our sole judgment.

3. **Loss, defense costs, regulatory compensatory awards, regulatory fines and penalties, privacy breach response costs, patient notification expenses, patient support and credit monitoring expenses, digital assets loss, special expenses, income loss, interruption expenses, cyber extortion expenses, cyber extortion monies** and **shadow audit expenses** will be paid as part of, and not in addition to the each **claim**" limit and the Annual Aggregate Limit.

4. If the Annual Aggregate Limit for a **covered entity** is exhausted by payment of **loss, defense costs, regulatory compensatory awards, regulatory fines and penalties, privacy breach response costs, patient notification expenses, patient support and credit monitoring expenses, digital assets loss, special expenses, income loss, interruption expenses, cyber extortion expenses, cyber extortion monies** or **shadow audit expenses**, or any combination thereof, then **our** obligations under this Endorsement shall be deemed completely fulfilled and extinguished for such **covered entity** and for any other **insured** sharing in such **covered entity's** coverage limits.

D. Related **Claims**

1. With respect to Coverages A, B, C and H, all related **claims** made against an **insured** will be considered a single **claim**, and only one "each **claim**" limit will apply to such **claim**. Such **claim** shall be deemed to have been first made on the date the earliest of the related **claims** was first made against an **insured** and shall be deemed to have been first reported to **us** on the date the earliest of the related **claims** was first reported to **us**. Appeals and any post-trial proceedings shall be considered part of the original **claim**. **Claims** will be deemed related if they are logically or causally connected by any common fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events, or transactions.

2. With respect to Coverages D, E, F and G, all **claims** arising out of the same, related or continuing incident(s), act(s), fact(s) or circumstance(s) will be considered a single **claim**, and only one "each **claim**" limit of liability will apply, regardless of the number of **claims** made or

the number of **insureds** involved or affected. All such **claims** will be deemed to be made on the date the earliest of such **claims** is first made.

3. If a **claim** is covered under more than one of the insuring agreements of this Endorsement, then only one "each **claim**" limit will apply. **We** have the sole discretion to allocate **claims** paid, if any, against the appropriate limit of liability.

4. In the event two or more **claims** arising out of the same facts, circumstances, situations, events, or transactions are covered under more than one insuring agreement of this Endorsement, then only one "each **claim**" limit will apply to such **claims**. **We** have the sole discretion to allocate **claims** paid, if any, against the appropriate limit of liability. All such **claims**, whenever first made, shall be considered as reported to **us** during the **policy period** in which an **insured** reports the first of such **claims** to **us**, and shall be subject to the limits of insurance applicable to that **policy**.

## SECTION IV – WHO IS AN INSURED

Each of the following is an **insured** under this Endorsement to the extent set forth below:

1. any **named insured**;

2. any **employee** of the **named insured**, but only if the **employee** is acting within the scope and course of their employment duties on behalf of the **named insured**;

3. any **mid-level provider** of the **named insured**, but only if the **mid-level provider** is acting within the scope and course of their duties as such on behalf of the **named insured**; and

4. any independent contractor of a **named insured**, but only if the independent contractor is acting within the scope and course of their duties as such on behalf of the **named insured**.

Unless provided for in Section III of this Endorsement, all individuals described in paragraphs 2 through 4 above shall share in the limits of only one **named insured**. **We** have the sole discretion to allocate the **claims** paid, if any, against the appropriate coverage limit.

## SECTION V – CONDITIONS

A. **Notice of Claim**

1. If a **claim** under Coverage A, B, C or H is made against an **insured**, the **insured** must give **us** written notice of such **claim** during the **policy period**, or during an extended reporting period, if applicable.

2. If an **insured** has a **claim** under Coverages D, E, F or G, the **insured** must give **us** written notice of such **claim** no later than sixty (60) days from the date an **insured** first discovers the **security breach**, **privacy breach**, **covered cause of loss**, **cyber extortion threat** or **act of terrorism** giving rise to such **claim**.

3. The **insureds** shall provide **us** with copies of all documentation comprising the **claim** as well as all authorization, cooperation, or assistance as **we** may require.

4. **We** are not obligated to pay any **loss**, **defense costs**, **regulatory fines and penalties**, **privacy breach response costs**, **patient notification expenses**, **patient support and credit monitoring expenses**, **digital assets loss**, **special expenses**, **income loss**, **interruption expenses**, **cyber extortion expenses**, **cyber extortion monies** and/or **shadow audit expenses** that are incurred prior to notification of a **claim**.

## B. Notice of Potential Claim

If, during the **policy period**, an **insured** first becomes aware of any facts or circumstances, which could give rise to a **claim** covered under this Endorsement, and if the **insured**, during the **policy period**, provides **us** with written notice of:

1. the details regarding such facts or circumstances;

2. the nature of the alleged or potential damages;

3. the identity of the potential claimant(s) and **insured(s)** involved;

4. the manner in which an **insured** first became aware of the facts or circumstances; and

5. the consequences, which have resulted or may result

then any **claim** subsequently arising from such reported facts or circumstances will be deemed a **claim** first made on the date notice complying with the foregoing requirements is received by **us**.

## C. Defense and Settlement

1. **We** have the right and duty to defend any **claim** covered by this endorsement. **We** have the right to appoint counsel, and **we** may investigate any **claim**. With **your** written consent, **we** may settle any **claim** as **we** believe may be proper. **We** shall not be obligated to pay any **claim** or judgment, or to defend, or to continue to defend, any **claim** after the limit of **our** liability is exhausted. **Your** consent shall not be required to make a settlement or payment:

    a. after a jury verdict, judgment or other ruling by a court or arbitrator establishing **your** liability, regardless of whether such verdict, judgment or ruling is subject to appeal or further judicial review;

    b. if **you** are deceased, have been declared legally incompetent by a court, or if a guardian, conservator or receiver has been appointed for **you**;

    c. if **you** cannot be located after reasonable efforts have been made by **us**; or

    d. if **you** are not the **named insured**.

2. **We** do not assume any duty to defend under Coverage H. **You** shall have free choice of counsel in connection with any **claim** to which Coverage H applies. Upon receiving notice of a **claim** under Coverage H, **we** will provide **you** with names of panel defense counsel. If **you** retain panel counsel to defend a **claim** under Coverage H, **we** will, subject to the other provisions of this Endorsement, pay 100% of covered **defense costs**, **shadow audit expenses** and **regulatory fines and penalties** up to **our** limit of liability. If **you** retain non-panel defense counsel, we will pay 75% of covered **defense costs**, **shadow audit expenses** and **regulatory fines and**

**penalties**, up to **our** limit of liability, and will not exceed $250.00 per hour. Rates for non-panel counsel will be limited to a maximum of $250.00 per hour. All counsel, panel and non-panel, must comply with our defense guidelines.

**D.**    **Loss Determination under Coverages E and G**

1.    <u>Digital Assets Loss:</u> For all coverage provided under Coverage E, item 5(a) – **Loss of Digital Assets**, any **digital assets loss** will be determined as follows:

     a.    If the impacted **digital asset** was purchased from a third party, then **we** will pay only the lesser of the original purchase price of the **digital asset** or the reasonable and necessary **digital assets loss**.

     b.    If it is determined that the **digital assets** cannot be replaced, restored or recreated, then **we** will only reimburse the actual and necessary **digital assets loss** incurred up to such determination.

2.    <u>Income Loss:</u> For any coverage provided under Coverage E, item 5(b) – **Non-Physical Business Interruption and Extra Expenses** and Coverage G, **income loss** will be determined as the reduction of an **insured's** income during the **period of restoration**, which is:

     a.    The **insured's** net income (net profit or loss before income taxes) that would have been reasonably projected, but which has been lost directly as a result of the total or partial interruption, degradation in service, or failure of an **insured's computer system** caused directly by a **covered cause of loss** or an **act of terrorism**. The revenue projection will take into account the prior experience of the **insured's** business preceding the date of the **covered cause of loss** or the **act of terrorism** and the probable experience had no **covered cause of loss** or **act of terrorism** occurred. Revenues include the amount of money paid or payable to an **insured** for goods, products or services sold, delivered or rendered in the normal course of the **insured's** business. Revenue projection will be reduced by the extent to which the **insured** uses substitute methods, facilities or personnel to maintain its revenue stream. The Company will take into consideration an **insured's** documentation of the trends in its business and variations in or other circumstances affecting its business before or after the **covered cause of loss** or **act of terrorism**, which would have affected the **insured's** business had no **covered cause of loss** or **act of terrorism** occurred; and

     b.    Any fixed operating expenses (including ordinary payroll) incurred, but only to the extent that such operating expenses must continue during the **period of restoration**.

**E.**    **Extended Reporting Period**

1.    If an Extended Reporting Period Endorsement is issued to an **insured** in accordance with the **policy**, then the period for reporting **claims** under this Endorsement will be extended for a period of up to one (1) year immediately following termination of the **policy**, but only for:

     a.    **Claims** under Coverages A, B, C, D and H of this Endorsement, which:

         1)    arise out of a **multimedia peril, security and privacy wrongful act, security breach, privacy breach** or **wrongful act** that takes place or first commences on or after the **retroactive date** and prior to the **policy** termination or expiration date; and

         2)    are first made during the extended reporting period; and

    b.    **Claims** under Coverages E, F, and G of this Endorsement which:

        1)    arise out of a **covered cause of loss, cyber extortion threat** or **act of terrorism** occurring or first commencing during the **policy period**; and

        2)    are first made during the extended reporting period; and

        3)    are reported to **us** in accordance with Condition A of this endorsement.

2.    The Extended Reporting Period will not apply to any **claim** resulting from any actual or alleged **multimedia peril, security and privacy wrongful act, security breach, privacy breach, covered cause of loss, cyber extortion threat, act of terrorism,** or **wrongful act** that occurs during a **suspension period**.

3.    If an Extended Reporting Period Endorsement is not issued for an **insured**, then such **insured's** coverage under this Endorsement will terminate when the **insured's** professional liability coverage with **us** is terminated.

4.    All terms and conditions of this Endorsement, including the limits of liability set forth in Section III – Limits of Insurance, will continue to apply during any Extended Reporting Period.

5.    The existence of an Extended Reporting Period will not increase or reinstate any Each **Claim** Limit or any Annual Aggregate Limit.

**F.    Other Insurance**

1.    The coverage provided by this Endorsement is excess insurance over any other valid and collectible insurance available to an **insured**, including any self-insured retention or deductible portion thereof, whether such insurance is stated to be primary, pro rata, contributory, excess, contingent or otherwise, unless such insurance specifically applies as excess insurance over this Endorsement.

2.    When coverage under this Endorsement and any other insurance apply to a **claim** on the same basis, **we** will pay only our proportionate share that represents the ratio between the limit of liability available to the **insured** under this Endorsement and the total limit of liability under all applicable insurance.

**G.    Special Conditions Applicable to Regulatory Proceedings**

1.    <u>Voluntary Self-Disclosure</u>:  In the event any **defense costs, shadow audit expenses** or **regulatory fines and penalties** result from **voluntary self-disclosure, you** must establish that the circumstances giving rise to the disclosure became known to **you** fortuitously and subsequent to the initial inception date of this coverage.

2.    <u>Shadow Audits</u>:  **you** shall not have a **shadow audit** performed without **our** prior approval of the **shadow audit** and its expense. Only **shadow audit expenses** from previously approved **shadow audits** will be reimbursed under this Endorsement. **We** will not unreasonably withhold such approval.

## SECTION VI - DEFINITIONS

With respect to the coverage provided by this Endorsement, the following terms are defined as follows. Refer to the Definitions section in the **policy** for terms that are shown in bold in this Endorsement, but are not defined below. If a term is defined below and in the **policy**, the definition below applies to the coverage provided by this Endorsement.

A.    **Act of Terrorism** means an act, including, but not limited to, the use of force or violence and/or the threat thereof, by any person or group(s) of persons, whether acting alone or on behalf of, or in connection with any organization(s) or government(s), which is committed for political, religious, ideological, or similar purposes including the intention to influence any government and/or put the public, or any section of the public, in fear.

B.    **Adverse media report** means any unpredictable report or communication of an actual or potential **security breach** or **privacy breach**, which:

    1.    has been publicized through any media channel including, but not limited to, television, **print media**, radio or electronic networks, the Internet, and/or electronic mail; and

    2.    threatens material damage to an **insured's** reputation or brands.

C.    **Assumed under contract** means liability for **damages** resulting from a **multimedia peril** where such liability has been assumed by an **insured** in the form of a written hold harmless or indemnity agreement that predates the **multimedia peril**.

D.    **Billing Errors Proceeding** means:

    1.    A civil or administrative investigation or other civil or administrative proceedings instituted against an **insured** by a **qui tam plaintiff**, **government entity** or **commercial payer** alleging a **wrongful act**; and

    2.    any proceeding described in paragraph 1 above which is instituted against an **insured** because of **voluntary self-disclosure**.

E.    **Bodily Injury** means physical injury, sickness, disease, pain or death, and, if arising out of the foregoing, mental anguish, mental injury, shock, humiliation or emotional distress sustained by a person at any time.

F.    **BPO service provider** means any third-party independent contractor that provides business process outsourcing services for the **named insured's** benefit under a written contract with such **insured**, including, but not limited to, call center services, fulfillment services, and logistical support.

G.    **Claim(s)** means:

    1.    with respect to Coverages A and B only:

        a.    A written demand for monetary damages or other non-monetary relief against an **insured**;

        b.    Any civil proceeding or arbitration proceeding commenced against an **insured** by the service of a summons, complaint or similar pleading; or

        c.    A written request to toll or waive a statute of limitations relating to a potential **claim** against an **insured**, including any appeal therefrom.

A **claim** under Coverages A and B will be deemed to be first made when the foregoing is first received by an **insured**.

2.     with respect to Coverage C only:

A **government investigation** commenced against an **insured** by letter notification, complaint or order of investigation. A **claim** under Coverage C will be deemed to be first made when it is first received by the **insured**.

3.     with respect to Coverage D only:

A written report by an **insured** to **us** of an **adverse media report**, **security breach** or **privacy breach**. A **claim** under Coverage D will be deemed to be first made when such written report is received by **us**.

4.     with respect to Coverage E only:

A written report by an **insured** to **us** of a **covered cause of loss**. A **claim** under Coverage E will be deemed to be first made when such written report is received by **us**.

5.     with respect to Coverage F only:

A written report by an **insured** to **us** of a **cyber extortion threat**. A **claim** under Coverage F will be deemed to be first made when such written report is received by **us**.

6.     with respect to Coverage G only:

A written report by an **insured** to **us** of an **act of terrorism**. A **claim** under Coverage G will be deemed to be first made when such written report is received by **us**.

7.     with respect to Coverage H only:

A **regulatory proceeding** commenced against the **insured** by letter notification, complaint or order of investigation. A **claim** under Coverage H will be deemed to be first made when it is first received by the **insured**.

**H.**     **Commercial payer** means any private health insurance company.

**I.**     **Computer hardware** means the physical components of any **computer system** including CPU's, memory, storage devices, storage media, and input/output devices and other peripheral devices and components, including, but not limited to cables, connectors, fiber optics, wires, power supply units, keyboards, display monitors and audio speakers.

**J.**     **Computer program(s)** means an organized set of instructions that, when executed, causes a computer to behave in a predetermined manner. **Computer program(s)** include but are not limited to communication systems, networking systems, operating systems, and related **computer programs** used to create, maintain process, retrieve, store, and/or transmit electronic **data**.

**K.**     **Computer system(s)** means interconnected electronic, wireless, web, or similar systems (including all **computer hardware** and software) used to process and store **data** or information in an analogue, digital, electronic or wireless format including, but not limited to, **computer programs**, electronic

**data**, operating systems, firmware, servers, media, interfaces, routers, hubs, input and output devices, mobile devices, networking equipment, websites, extranets, off line storage facilities (to the extent that they hold electronic **data**), and electronic backup equipment.

L.    **Computer virus** means a program that possesses the ability to create replicas of itself (commonly known as an "auto-reproduction" program) within other programs or operating system areas, and which is capable of spreading copies of itself, wholly or in part, to other **computer systems**.

M.    **Covered cause of loss** means, and is limited to, the following:

1.    Accidental Damage or Destruction

    a.    Accidental physical damage or destruction of **electronic media**, so that stored **digital assets** are no longer machine-readable;

    b.    Accidental damage or destruction of **computer hardware**, so that stored **data** is no longer machine-readable;

    c.    Failure in power supply or under/over voltage, but only if such power supply is under the direct operational control of a **named insured**. "Direct operational control" includes back-up generators;

    d.    **Programming error** of **delivered programs**; or

    e.    Electrostatic build-up and static electricity.

2.    Administrative or Operational Mistakes

    An accidental, unintentional, or negligent act, mistake, error or omission by an **insured**, a **BPO service provider** or **Outsourced IT service provider** in:

    a.    The entry, or modification of an **insured's** electronic **data**, which causes damage to such **data**; or

    b.    The creation, handling, development, modification or maintenance of **digital assets**; or

    c.    The on-going operation or maintenance of an **insured's computer system**, excluding the design, architecture, or configuration of the **insured's computer system**.

3.    Computer Crime and Computer Attacks

    An act, mistake or negligent error or omission in the operation of an **insured's computer system** or handling of **digital assets** by an **insured**, a **BPO service provider** or **Outsourced IT service provider**, which fails to prevent or hinder any of the following attacks on the **insured's computer system**:

    a.    a **denial of service attack**;

    b.    **malicious code**;

    c.    **unauthorized access**; or

    d.    **unauthorized use**.

N.    **Criminal proceeding** means any governmental action for enforcement of criminal laws, including those offenses for which conviction could result in imprisonment and/or criminal fine.

O.    **Cyber extortion expenses** mean all reasonable and necessary costs and expenses, which an **insured** incurs, with **our** prior written consent, as a direct result of a **cyber extortion threat**, other than **cyber extortion monies**.

P.     **Cyber extortion monies** mean any funds or property, which an **insured** pays, with **our** prior written consent, to a person(s) or entity (ies) reasonably believed to be responsible for a **cyber extortion threat**, in order to terminate such **cyber extortion threat**.

Q.     **Cyber extortion threat** means a credible threat or series of related credible threats, including but not limited to a demand for **cyber extortion monies**, which is directed at an **insured** and threatens to:

1.     Release, divulge, disseminate, destroy or use the confidential information of a third party taken from an **insured** as a result of **unauthorized access** to, or **unauthorized use** of, the **insured's computer system**;

2.     Introduce **malicious code** into the **insured's computer system**;

3.     Corrupt, damage or destroy the **insured's computer system**;

4.     Restrict or hinder access to the **insured's computer system**, including, but not limited to the threat of a **denial of service attack**; or

5.     Electronically communicate with an **insured's** patients and falsely claim to be an **insured** or to be acting under an **insured's** direction in order to falsely obtain personal or confidential information (also known as "pharming," "phishing," or other types of false communications).

R.     **Data** means any and all information stored, recorded, appearing or present in or on an **insured's computer system**, including but not limited to, information stored, recorded, appearing or present in or on an **insured's** electronic and computer databases, the Internet, intranet, extranet and related websites, facsimiles and electronic mail.

S.     **Defense Costs** means reasonable and necessary legal fees and related costs and expenses incurred in the investigation, defense and appeal of any **claim** under Coverage A, B, C or H. **Defense costs** shall not include any wages, salaries, fees, overhead or other charges incurred by, or paid to, any **insured** for time spent in cooperating in the defense and investigation of any **claim** or potential **claim** under this Endorsement.

T.     **Delivered programs** means programs, applications, and software where the development stage has been finalized, having passed all test-runs and been proven successful in a live environment.

U.     **Denial of service attack** means an event caused by unauthorized or unexpected interference or a malicious attack intended by the perpetrator to overwhelm the capacity of a **computer system** by sending an excessive volume of electronic **data** to such **computer system** in order to prevent authorized access to such **computer system**.

V.     **Digital assets** mean **data** and **computer programs** that exist in the **insured's computer system**. **Digital assets** do not include **computer hardware**.

W.     **Digital assets loss** means reasonable and necessary expenses and costs which an **insured** incurs to replace, recreate or restore **digital assets** to the same state and with the same contents immediately before it was damaged, destroyed, altered, misused, or stolen, including expenses for materials and machine time, as well as costs associated with restoration, recreation and replacement of **digital assets**. **Digital Assets Loss** also includes amounts representing **employee** work time to replace, recreate or

restore **digital assets**, which shall be determined on a pro-rata dollar basis as based upon an **insured's** schedule of **employee** billable hours.

**X.**  **Electronic media** means floppy disks, CD ROM's, flash drives, hard drives, solid state drives, magnetic tapes, magnetic discs, or any other media on which electronic data is recorded or stored.

**Y.**  **EMTALA Proceeding** means proceedings instituted against an **insured** by a **government entity** alleging violations of the Emergency Medical Treatment and Labor Act (EMTALA) (42 U.S.C. § 13955dd).

**Z.**  **Firmware** means the fixed programs that internally control basic low-level operations in a device.

**AA.**  **Government Entity** means:

1.  any department, agency, task force or other organization created by any United States federal or state law, regulation, rule or executive order; or

2.  any department, agency, task force or other organization operated, funded or staffed, in whole or in part, by the United States federal government or any state government; or

3.  any organization operating as a Medicare Integrity Program Contractor.

**BB.**  **Government Investigation** means a formal investigation instituted against an **insured** by a **government entity**, the subject matter of which is a **privacy breach** or **security breach**.

**CC.**  **HIPAA Proceeding** means proceedings instituted against an **insured** by a **government entity**, the subject matter of which is an actual or alleged violation of the Health Insurance Portability and Accountability Act (HIPAA) (Pub. L. 104-191) privacy regulations.

**DD.**  **Income Loss** means financial loss, which an **insured** sustains, as determined in accordance with the provisions of Coverage E, item 5(b) or Coverage G.

**EE.**  **Insured** means any person or entity qualifying as such under Section IV of this Endorsement.

**FF.**  **Insured's computer system** means:

1.  a **computer system** operated by and either owned by, or leased to a **named insured**;

2.  with respect to Coverage B only, a **computer system** operated by a **BPO service provider** or **Outsourced IT service provider** and used for the sole purpose of providing hosted computer application services to a **named insured** or for processing, maintaining, hosting, or storing a **named insured's** electronic **data**, pursuant to a written contract with the **named insured** for such services.

**GG.**  **Interruption Expenses** means those expenses, excluding **special expenses**, which an **insured** incurs in accordance with the provisions of Coverage E, item 5(b), or Coverage G to:

1.  Avoid or minimize the suspension of the **named insured's** business as a result of a total or partial interruption, degradation in service, or failure of the **insured's computer system** caused directly by a **covered cause of loss** or an **act of terrorism**, which an **insured** would not have incurred had no **covered cause of loss** or **act of terrorism** occurred, including, but not limited to, the use of rented/leased external equipment, substitution of other work or production

procedures, use of third party services, or additional amounts; and

2.  Minimize or avoid a **covered cause of loss** or an **act of terrorism** and continue the **named insured's** business.

The amount of **interruption expenses** recoverable under paragraph 1 above shall not exceed the amount by which the covered **income loss** is reduced by such incurred expenses.

**HH.** **Loss** means the amount that an **insured** is legally obligated to pay as a result of a **claim** under Coverage A or B, including damages and judgments (including prejudgment and post-judgment interest awarded against an **insured** on that part of any judgment paid or to be paid by **us**); legal fees and costs awarded pursuant to such judgments; and settlements negotiated with **our** consent.

**Loss** does not include: (1) taxes; (2) any amount for which an **insured** is absolved from legal responsibility to make payment to a third party; (3) amounts owed under, or assumed by, any contract; (4) an **insured's** future profits or royalties or any return, withdrawal, restitution or reduction of professional fees, profits or other charges; (5) punitive, liquidated or exemplary damages or the multiplied portion of multiplied damages; (6) fines, sanctions or penalties; (7) any matters that are deemed uninsurable under applicable law; (8) the costs to comply with orders granting injunctive or non-monetary relief, including specific performance or any agreement to provide such relief; (9) disgorgement of any remuneration or financial advantage to which an **insured** was not legally entitled; and (10) settlements negotiated without **our** consent.

**II.** **Malicious code** means software intentionally designed to insert itself and damage a **computer system** without the owner's informed consent by a variety of forms including, but not limited to, viruses, worms, Trojan horses, spyware, dishonest adware, and crimeware.

**JJ.** **Multimedia peril(s)** means the release of, or display of, any **electronic media** on a **named insured's** internet site or **print media** for which a **named insured** is solely responsible, which directly results in any of the following:

1.  any form of defamation or other tort related to the disparagement or harm to the reputation or character of any person or organization, including libel, slander, product disparagement or trade libel, and infliction of emotional distress, mental anguish, outrage or outrageous conduct, if directly resulting from any of the foregoing;

2.  Invasion, infringement or interference with an individual's right of privacy or publicity, including false light, intrusion upon seclusion, commercial misappropriation of name, person, or likeness, and public disclosure of private facts;

3.  Plagiarism, piracy or misappropriation of ideas under an implied contract;

4.  Infringement of copyright, trademark, trade name, trade dress, title, slogan, service mark or service name; or

5.  Domain name infringement, improper deep linking, or framing.

**KK.** **Named Insured** means:

1.  The **insured** designated as the "named insured" on the **declarations**; and

2. Any physician or entity designated in the schedules of covered physicians and entities.

**LL.** **Operational programs** means programs and software that are ready for operational use, having been fully developed, tested, and accepted by an **insured**.

**MM.** **Outsourced IT service provider** means a third party independent contractor that provides information technology services for a **named insured's** benefit, under a written contract with the **named insured**. **Outsourced IT service provider** services include but are not limited to hosting, security management, co-location, and **data** storage.

**NN.** **Patient Notification Expenses** means all reasonable and necessary expenses incurred by an **insured**, with **our** prior written consent, to comply with governmental privacy legislation mandating notification to affected individuals in the event of a **security breach** or **privacy breach**, including, but not limited to: 1) legal expenses; 2) computer forensic and investigation fees; 3) public relations expenses; 4) postage expenses; and 5) related advertising expenses.

**OO.** **Patient support and credit monitoring expenses** means those reasonable and necessary expenses which an **insured** incurs, with **our** prior written consent, for the provision of customer support activity, in the event of a **privacy breach**, including the provision of credit file monitoring services and identity theft education and assistance for up to a period of twelve (12) months from the date of enrollment in such credit file monitoring services.

**PP.** **Period of Restoration** means the period of time that commences on the date when the interruption, degradation or failure of the **insured's computer system** began and ends on the earlier of:

1. The date when the **insured's computer system** is restored or could have been repaired or restored with reasonable speed to the same condition, functionality and level of service that existed prior to the **covered caused of loss** or **act of terrorism** plus no more than thirty (30) consecutive days after the restoration of the **insured's computer system** to allow for restoration of the **named insured's** business; or

2. One hundred and twenty (120) consecutive days after the notice of the **covered cause of loss** or **act of terrorism** is received by **us**.

**QQ.** **Print media** means newspapers, newsletters, magazines, brochures, books and literary works in any form, or other types of publications and advertising materials, including packaging, photographs, and digital images.

**RR.** **Privacy breach** means any of the below, whether actual or alleged, but only if committed or allegedly committed by an **insured** or by others acting on the **named insured's** behalf for whom such **insured** is legally responsible, including **BPO Service Providers** and **Outsourced IT Service Providers**:

1. breach of confidence, invasion, infringement, interference, or violation of any rights to privacy including, but not limited to, breach of an **insured's** privacy policy, breach of a person's right of publicity, false light, intrusion upon a person's seclusion, failure to properly handle, manage, store, destroy or otherwise control a person's private information in any format, or the intrusion or misappropriation of a person's name or likeness for commercial gain; or

2. any breach or violation of U.S. federal, state or local privacy statutes or regulations, as they currently exist and as amended, or as associated with confidentiality, access, control, and use of personally identifiable, non-public information, including, but not limited to:

a. the Health Insurance Portability and Accountability Act of 1996 (HIPAA) (Pub. L. 104-191), including Title II which requires protection of confidentiality and security of electronic protected health information, and the rules and regulations promulgated thereunder as they currently exist and as amended, including related state medical privacy laws as they currently exist and as amended;

b. the Gramm-Leach-Bliley Act of 1999 (GLBA), also known as the Financial Services Modernization Act of 1999 (Pub. L. 106-102), including sections concerning security protection and standards for customer records maintained by financial services companies, and the rules and regulations promulgated thereunder as they currently exist and as amended;

c. the State Attorney General's and the Federal Trade Commission's enforcement actions regarding security and privacy of consumer information;

d. governmental privacy protection regulations or laws, as they currently exist now or in the future, which require commercial Internet sites or on-line services that collect personal information or medical information (as defined by such laws or acts) to post privacy policies and adopt specific privacy controls or to notify those impacted by identity or **data** theft, abuse or misuse;

e. federal and state consumer credit reporting laws, such as the Fair Credit Reporting Act (FCRA) (15 U.S.C. § 1681 et seq.), or

f. the Health Information Technology for Economic and Clinical Health Act (HITECH Act) enacted under Title XIII of the American Recovery and Reinvestment Act of 2009 (ARRA) (Pub. L. 111-5).

SS. **Privacy breach response costs** means those reasonable and necessary fees and expenses, which an **insured** incurs, with **our** prior written consent, for the employment of a public relations consultant, if such action is deemed necessary in order to avert or mitigate any material damage to a **named insured's** reputation or brands, which results or reasonably will result from an **adverse media report**.

TT. **Programming error** means an error that occurs during the development or encoding of a computer program, software, or application, which would, when in operation, result in a malfunction or incorrect operation of a **computer system**.

UU. **Property Damage** means injury to tangible property, including all resulting loss of use of that property, and loss of use of tangible property that is not physically injured.

VV. **Qui Tam Plaintiff** means a private plaintiff under the False Claims Act (31 U.S.C. §§ 3729 – 3733).

WW. **Regulatory Compensatory Award** means a sum of money that an **insured** is legally obligated to pay as an award or fund for affected individuals, including a regulatory agency's monetary award to a third party, due to an adverse judgment or settlement arising out of a **government investigation**. **Regulatory compensatory award** does not include a criminal penalty or fine issued by a regulatory agency of any kind, including federal, state, or local governmental agencies.

XX. **Regulatory Fines and Penalties** mean any administrative fines and penalties an **insured** is legally required to pay because of a **government investigation** or **regulatory proceeding**.

YY. **Regulatory Proceeding** means and is limited to any of the following instituted against an **insured**:

1. A **Billing errors proceeding**,

    2.    An **EMTALA proceeding**;

    3.    A **Stark proceeding**; or

    4.    A **HIPAA Proceeding.**

**ZZ.**   **Restitution** means repayment of fees, reimbursements, profits, charges or benefit payments received by an **insured** from:

    1.    a governmental health benefit payer or programs, carrier or intermediary making payments as part of, or in connection with, any such program; or

    2.    a **commercial payer**; or

    3.    any patient

to which an **insured** was not legally entitled, because of a billing error or errors, and for which repayment is sought in a **billing errors proceeding**.

**AAA.**   **Retroactive date** means the date stated as such in the **declarations** or Schedules of Covered Entities and Physicians.

**BBB.**   **Security and privacy wrongful act** means any of the below, whether actual or alleged, but only if committed or alleged committed by an **insured**:

    1.    The failure to prevent or hinder a **security breach**, which in turn results in:

        a.    the alteration, copying, corruption, destruction, deletion, or damage to electronic **data** stored on the **insured's computer system**;

        b.    the theft, **loss** or unauthorized disclosure of electronic and non-electronic confidential commercial, corporate, personally identifiable, or private information that is in an **insured's** care, custody or control;

        c.    the theft, loss or unauthorized disclosure of electronic and non-electronic confidential commercial, corporate, personally identifiable, or private information that is in the care, custody or control of a **BPO Service Provider** or **Outsourced IT Service Provider** that is holding, processing or transferring such information on an **insured's** behalf; provided, however, that the theft, loss or unauthorized disclosure occurs while an **insured's** written contract with such **BPO Service Provider** or **Outsourced IT Service Provider** is in effect; or

        d.    **unauthorized use** of or **unauthorized access** to a **computer system** other than an **insured's computer system**;

    2.    The failure to timely disclose a **security breach** affecting personally identifiable, nonpublic information, or the failure to dispose of personally identifiable, nonpublic information within the required time period, in violation of privacy regulations in effect now or in the future;

    3.    The failure to prevent the transmission of **malicious code** or a **computer virus** from an **insured's computer system** to the **computer system** of a third party;

    4.    A **privacy breach**;

    5.    The failure to prevent or hinder the **insured's computer system** from participating in a **denial of service attack** directed against internet sites or the **computer system** of any third party; or

6.    Loss of employee information.

**CCC.  Security breach** means:

1.   **unauthorized access** to, or **unauthorized use** of the **insured's computer system**, including **unauthorized access** or **unauthorized use** resulting from the theft of a password from the **insured's computer system** or from an **insured**;

2.   a **denial of service attack** against an **insured's computer system**; or

3.   infection of the **insured's computer system** by **malicious code** or the transmission of **malicious code** from the **insured's computer system**,

whether any of the foregoing is a specifically targeted attack or a generally distributed attack. A series of continuing **security breaches**, related or repeated **security breaches**, or multiple **security breaches** resulting from a continuing failure of computer security shall be considered a single **security breach** and be deemed to have taken place at the time of the first such **security breach**.

**DDD.  Shadow audit** means an audit performed by a qualified professional, who examines the same billing records and related documents as those subject to an ongoing **billing errors proceeding**, with the intent of providing an **insured** with a private expert opinion. Such **shadow audits** are subject to **our** prior approval.

**EEE.  Shadow audit expense(s)** means the fees for the services of any qualified audit professional and associated expenses incurred in the course of a **shadow audit**.

**FFF.  Special expenses** mean reasonable and necessary costs and expenses that an **insured** incurs to:

1.   Prevent, preserve, minimize, or mitigate any further damage to the **insured's digital assets**, including the reasonable and necessary fees and expenses of specialists, outside consultants or forensic experts that an **insured** retains;

2.   Preserve critical evidence of any criminal or malicious wrongdoing;

3.   Purchase replacement licenses for **computer programs** because the copy protection system and/or access control software was damaged or destroyed by a **covered cause of loss** or an **act of terrorism**; or

4.   Notify an **insured's** patients of a total or partial interruption, degradation in service, or failure of the **insured's computer system** resulting from a **covered cause of loss** or **act of terrorism**.

**GGG.  Stark Proceeding** means proceedings instituted against an **insured** by a **government entity** alleging violation of any federal, state or local anti-kickback or self-referral laws.

**HHH.  Unauthorized access means** the gaining of access to a **computer system** by an unauthorized person or persons.

**III.  Unauthorized use** means the use of a **computer system** by unauthorized persons or authorized persons in an unauthorized manner.

**JJJ.** **Waiting Period** means the 8-hour period of time, which must elapse before **we** will consider the recovery of loss under Coverage E, item 5(b) or Coverage G. The **waiting period** applies to each **period of restoration**.

**KKK.** **Wrongful Act** means:

1. With respect to a **billing errors proceeding**, the actual or alleged presentation of, causing or allowing to be presented, or being liable for the presentation of, erroneous billings by the **insured** to a government health benefit payer or **commercial payer** from which the **insured** seeks and/or has received payment or reimbursement for **professional services** or medical items provided or prescribed by the **insured**;

2. With respect to an **EMTALA proceeding**, any actual or alleged violation of the Emergency Medical Treatment and Labor Act (EMTALA) (42 U.S.C. § 13955dd);

3. With respect to a **Stark Proceeding**, any actual or alleged violation of any federal, state or local anti-kickback or self-referral laws;

4. With respect to a **HIPAA Proceeding**, any actual or alleged violation of the Health Insurance Portability and Accountability Act (HIPAA) (Pub. L. 104-191) privacy regulations

**LLL.** **Voluntary Self-Disclosure** means an **insured** discloses information, without inquiry, to any **government entity** or **commercial payer**, which may serve as grounds for a **billing errors proceeding** against such **insured**. Such information must have become known to such **insured** fortuitously and subsequent to the initial effective date of this insurance.

THIS ENDORSEMENT FORMS A PART OF THE **POLICY**. ALL OTHER TERMS AND CONDITIONS OF THE **POLICY** REMAIN THE SAME AND APPLY TO THIS ENDORSEMENT UNLESS THIS ENDORSEMENT STATES OTHERWISE.

**PSIC** | Professional Solutions
INSURANCE COMPANY

14001 University Avenue · Clive, IA 50325-8258
Toll-Free 800-788-8540  Toll-Free FAX 800-510-6370

# Certificate of Insurance

Professional Solutions Insurance Company

Claims-Made Professional Liability Policy No. PPL513076

This professional liability policy of insurance covers the Insured identified below for the policy period indicated. Notwithstanding any requirement, term, or condition of any contract or other document with respect to which this verification may be issued or may pertain, the insurance afforded by the policy described herein is subject to all the terms, exclusions and conditions of the policy.

| | |
|---|---|
| Named Insured: | Housecall Physicians of Illinois SC DBA MD@Home |
| Insured Practice Address: | 1100 W Cermak Road<br>Suite 500C<br>Chicago, IL 60608 |
| Insured: | Housecall Physicians of Illinois SC DBA MD@Home |
| Limits of Liability: | $1,000,000 Per Claim<br>$3,000,000 Policy Aggregate |
| Policy Term: | From 5/23/2014 to 5/23/2015 |
| Retroactive Date: | 5/23/2011 |
| Cyber/RAC Limits: | $50,000 Each Claim<br>$100,000 Annual Aggregate |

The policy also covers the following types of employed ancillary providers for duties performed while working under the supervision of the Named Insured: Registered Nurse, Licensed Practical Nurse, Radiation Therapy Technician, Medical Assistant, Physical Therapist and other ancillary providers as reviewed and approved by Professional Solutions Insurance Company.

**This Certificate of Insurance is provided on behalf of the Insured and is for information purposes only and extends no rights to anyone other than the Insured. This Certificate of Insurance does not affirmatively or negatively amend, extend, or alter the coverage afforded by the Policy.**

**PROFESSIONAL SOLUTIONS INSURANCE CO.**

*Jacqueline L. Anderson*
Authorized Representative

Dated at Clive, IA this day of: __12/3/2014__

Policy Number: PPL513076
PSIC-CM-Cert

08/14